In the
United States Court of Appeals
For the Seventh Circuit

Nos. 00-3521 & 00-3847

UNITED STATES OF AMERICA,

Plaintiff-Appellee,
Cross-Appellant,

v.

CARNELL BROWN,

Defendant-Appellant,
Cross-Appellee.

Appeals from the United States District Court
for the Northern District of Illinois, Western Division.
No. 00-CR-50005--Philip G. Reinhard, Judge.

Argued September 13, 2001--Decided December 7, 2001

Before RIPPLE, ROVNER, and EVANS, Circuit
Judges.

EVANS, Circuit Judge.  A few years ago, we observed that defendants who receive favorable calls under the federal sentencing guidelines should think twice (actually we said more than twice) about appealing their cases when they have little likelihood of success. United States v. Bradley, 165 F.3d 594 (1999). That caution was appropriate, we thought, because a defendant's appeal often draws a cross-appeal by the government of the sentence imposed where it otherwise might not be inclined to appeal. This case comes to us in precisely the same fashion as did Bradley, where we issued our cautionary advice. Carnell Brown appeals his conviction on a charge of being a felon in possession of a firearm (18 U.S.C. sec. 922(g)), but his appeal has little merit. On the other hand, the government's cross-appeal on a sentencing issue, which may or may not have been filed if Brown hadn't appealed (we'll never know for sure), has some bite. For the reasons we are about to state, we affirm Brown's conviction but vacate his sentence and remand for further proceedings.

Brown's appeal can be quickly resolved.

Here are the only facts we really have to know.

A police officer stopped a car Brown was driving around midnight on a December evening in an area of Rockford, Illinois, where considerable criminal activity--including the shooting of a police officer a few months before--takes place. Brown's car was stopped because its license plate, which was lying down in the area of the rear window, was not visible. When the car was stopped, the officer said Brown appeared to be nervous, repeatedly glanced backwards, and seemed to be moving his hands around his lap area. When Brown could not produce a driver's license (apparently it was suspended) and had no other identification, he was told to step out of the car. Brown complied with the request but made a quick move, which caused the officer to decide to pat him down. The pat-down revealed a loaded .38 caliber Smith & Wesson revolver to be lurking in the right front pocket of the jacket Brown was wearing.

A nighttime traffic stop, especially in an area where crime is not a stranger, is more fraught with potential danger to an officer than would be a stop during the light of day. And a stop by a lone officer at night is even more dangerous. Add to this Brown's movements in the car, his failure to produce a license, and his quick movement, and we have, from the officer's perspective, more than what is necessary to conclude that a limited pat-down for weapons was a permissible and prudent course for the officer to take to better ensure his safety. As Terry v. Ohio, 392 U.S. 1, holds, if the facts demonstrate that "a reasonably prudent man in the circumstances would be warranted in the belief that his safety . . . was in danger," a limited search for a weapon is permissible. It was permissible here. All this means that the district judge did not err, as the defendant now argues, when he denied a motion to suppress the revolver from the evidence presented at the trial which resulted in Brown's conviction.

Brown also makes a half-hearted attack on the sufficiency of the evidence against him, but once the gun was received, any attempt to claim--as Brown did to the jury--that he didn't

"knowingly" possess it was feeble. The evidence was clearly sufficient.

Brown's final argument also comes up dry. When he was sentenced, his guideline range was increased by 2 levels for obstructing justice under U.S.S.G. sec.3C1.1 because the judge determined that Brown lied when he testified that he told the officer "I don't know where that gun come (came) from" as it was removed from his jacket. The arresting officer gave contrary testimony during the trial, noting that Brown said nothing and expressed no surprise when the gun was discovered. The judge's determination that Brown lied, a finding of fact reviewable only for clear error, will not be disturbed.

Which brings us to the government's cross-appeal. The federal sentencing guideline scheme calls for more severe sentences when defendants have criminal records. In addition to the general ratcheting up of a sentence based on a defendant's criminal history under the guideline grid, substantially increased penalties are called for under several laws, including the Armed Career Criminal Act, 18 U.S.C. sec. 924(e), which is involved in this case. Under that Act, a third conviction for a "violent felony" triggers a greater sentence, and the issue presented by the government's cross-appeal is whether Brown had three qualifying convictions. Brown concedes that he has two qualifying "violent felony" prior convictions,/1 but he denies that a third conviction, one recorded in 1984, qualifies as a violent felony under sec. 924(e). The district court agreed with Brown on this issue and declined to impose sentence under the Armed Career Criminal Act.

The Armed Career Criminal Act defines a "violent felony" as including any crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. sec. 924(e)(2)(B)(ii). Brown's third felony involved a violation of the Illinois pandering statute, 720 ILCS sec. 5/11-16.

Everyone pretty much knows what a panderer is--quaint language in a 70-year-old Kentucky case colorfully tells us that he is someone "who procures for

another the gratification for his lusts. He is a panderer who solicits trade for a prostitute, or lewd woman." Lutes v. Commonwealth, 33 S.W.2d 620 (Court of Appeals of Kentucky, 1930). The Illinois statute under which Brown was convicted describes two kinds of panderers, one being someone who merely "arranges" a situation in which a person may practice prostitution and the other being someone who "compels" a person to become a prostitute. Although both types of panderers must act "for money" and both are guilty of Class 4 felonies in Illinois if they do so, it is obvious that the "compeller" is a more serious violator of the law than a mere "arranger." Brown was charged and convicted under the "compelling" prong of the statute.

The very able district court in this case concluded that Brown's pandering-by-compulsion conviction was not a violent felony because "the potential risk of physical injury to another is not always present in this type of offense." The judge's conclusion was reached after comparing Brown's conviction to the prior convictions at issue in United States v. Shannon, 110 F.3d 382 (7th Cir. 1997) (en banc) (holding that statutory rape of 13-year-old girl is violent felony), and United States v. Thomas, 159 F.3d 296 (7th Cir. 1998) (holding that statutory rape where age of victim did not appear on charging document was not a violent felony). Focusing on the age of the victim in the two cases, the judge held that Brown's conviction "falls closer to" the conviction in Thomas.

We respectfully disagree with the district judge's conclusion because we think it ignores the compelled, nonconsensual nature of the prostitute's acts under the compelling prong of the Illinois pandering law. We think forced nonconsensual sex with strangers is "conduct that presents a serious potential risk of physical injury to another" as proscribed under the "otherwise" clause of the Armed Career Criminal Act.

We have broadly interpreted the "otherwise" clause of sec. 924(e) to include certain types of even nonforcible consensual sex, such as certain variations of statutory rape. Shannon,

110 F.3d at 387. In Thomas, we observed that compelled, "unconsented-to sex" with strangers is, "at the least, battery." 159 F.3d at 299. It really is more than that in our case because the prostitute, acting under compulsion, is not capable of giving "meaningful consent" to paid sexual acts. As we have explained, "[a]ll forcible sex offenses are crimes of violence," but "it does not follow that no nonforcible ones are." Shannon, 110 F.3d at 387. Pandering by compulsion may not always involve actual force, but it is always a coerced sex offense, tantamount, we think, to a form of rape. It is thus a "violent felony" under sec. 924(e)(2)(B)(ii) because the compelled sex act itself causes a "physical injury" to the prostitute acting, at least in part, not on her own volition.

We recently held that a sexual assault of a minor, though not involving intercourse, was nevertheless a "crime of violence" under U.S.S.G. sec.2L1.2, comment. (n.5). United States v. Martinez-Carillo, 250 F.3d 1101, 1105 (7th Cir. 2001). A crime of violence under the guidelines includes a felony that "presents a serious potential risk of physical injury to another," U.S.S.G. sec.4B1.2(a), a definition similar to the one for violent felonies under sec. 924(e)(2)(B)(ii). The defendant in Martinez-Carillo, pointing to Shannon, argued that his offense was not a "crime of violence" because "inserting a finger into a vagina, could not possibly lead to the pregnancy of the child." Martinez-Carillo, 250 F.3d at 1105. We rejected that argument and distinguished Shannon on the ground that the prior conviction in that case was classified as statutory rape while the prior conviction then under consideration "punishes more than sexual intercourse with a minor [and] is concerned with the nature of the relationship between the defendant and the child-victim." Id. We explained that "[d]espite the general similarities between" the charges in Martinez-Carillo and Shannon, the "statute creates a critical difference in our analysis because each case 'must be considered one by one to see whether the conduct punished by the particular law under which the defendant was convicted involves a serious risk of physical injury.'" Id. at 1105-06.

The Illinois statute prohibiting pandering by compulsion punishes more than unlawful sexual intercourse. It is concerned with the nature of the relationship between a panderer and a prostitute--a situation where one person, for money, compels another to submit to nonconsensual sex with a third person. That situation, unlike many cases of statutory rape as discussed in Shannon and Thomas, necessarily involves unconsented-to activity that is, by itself, a type of physical injury. Collateral injuries, such as sexually transmitted diseases, only make it more clear that the offense of pandering by compulsion involves "a serious potential risk of physical injury."

Finally, the judge's conclusion that "the potential risk of physical injury to another is not always present in this type of offense" ignores the plain language of the statute, which only requires a "potential risk." Actual physical injury need not be present. But in a case of pandering by compulsion, the "risk" of physical injury is always present, and that satisfies the requirement of sec. 924(e).

There may be other reasons--like the risk of contracting sexually transmitted diseases--for finding that pandering by compulsion qualifies as a violent felony under sec. 924(e)'s "otherwise" clause, but we need not consider them here. With what we have said, Brown qualified for treatment as an armed career criminal, and he should have been sentenced as such.

One final matter before the book on this case is closed. On May 21, 2001, we issued an order to Brown's attorney, Mark A. Byrd, directing him to show cause "why disciplinary action should not be taken against him pursuant to Circuit Rule 31(c)(1) and Fed. R. App. P. 46(c)." We need not repeat here what was said in that order.

Byrd responded to our order. To his credit, he acknowledges that his actions in this case are not defensible, and he has, to use his words, refused to "insult this Court with outlandish and unbelievable excuses or explanations" for his conduct. He "apologizes to this Court for his misconduct" and promises that "if

given an opportunity, he can and will conform his conduct to the requisites of Circuit Rule 26, as well as all other rules of this Court."

Based on the entire record, we believe a reprimand is appropriate. Attorney Byrd, accordingly, is reprimanded. As to Brown's appeal and the government's cross-appeal, the judgment of conviction is AFFIRMED, Brown's sentence is VACATED, and the case is REMANDED for resentencing.

FOOTNOTE

/1 Brown's criminal record, reproduced in the pre-sentence report, is horrid. In addition to an attempted murder conviction in 1991 and an Illinois "armed violence" conviction in 1993, his rap sheet is peppered with multiple convictions for things like theft and battery dating back to his days as a teenager.