United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 21, 2004**

Charles R. Fulbruge III
Clerk

REVISED JULY 29, 2004
IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-40741
_____

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JOSE SARMIENTO-FUNES

Defendant - Appellant

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

Before KING, Chief Judge, and REAVLEY and EMILIO M. GARZA,
Circuit Judges.

KING, Chief Judge:

The defendant pleaded guilty to illegally reentering the
country after having been deported.  On appeal, he principally
challenges the imposition of a sixteen-level sentence enhancement
under U.S.S.G. § 2L1.2.  We affirm the conviction but vacate the
sentence and remand for resentencing.

## I. BACKGROUND

Defendant-Appellant Jose Sarmiento-Funes, a citizen of
Honduras, was indicted in January 2003 for violating 8 U.S.C.
§ 1326 by unlawfully reentering the United States after having

been removed following an aggravated felony conviction. Sarmiento-Funes pleaded guilty. The forty-eight-month sentence imposed by the district court in May 2003 included a sixteen-level enhancement based on a previous conviction for a "crime of violence" within the meaning of U.S.S.G. § 2L1.2 cmt. n.1(B)(ii) (2002).

The prior conviction that generated the sentence enhancement was a 2002 Missouri conviction for "sexual assault," which the state statutes define as follows: "A person commits the crime of sexual assault if he has sexual intercourse with another person knowing that he does so without that person's consent." MO. ANN. STAT. § 566.040(1) (West 1999).[1] Sarmiento-Funes objected to the enhancement, pointing out that Missouri has a different statute, § 566.030, that outlaws "forcible rape." The sexual assault statute under which he was convicted, Sarmiento-Funes urged the district court, does not require the use of force. The district

---

[1] The record in this case includes a state court criminal information, but the information only tracks the language of the statute. This case accordingly does not involve the question of the extent to which the sentencing court can use charging papers to narrow down a broad statute in order to determine more precisely the nature of the conduct of which the defendant was convicted. See, e.g., Taylor v. United States, 495 U.S. 575, 602 (1990); United States v. Calderon-Pena, 339 F.3d 320 (5th Cir. 2003), vacated & reh'g granted, 362 F.3d 293 (5th Cir. 2004). Further, although the Presentence Investigation Report (PSR) contains some additional details possibly gleaned from a police report (although their provenance is unclear) that information cannot be used in determining whether Sarmiento-Funes committed a "crime of violence." See United States v. Turner, 349 F.3d 833, 836-37 (5th Cir. 2003); United States v. Allen, 282 F.3d 339, 342-43 (5th Cir. 2002).

2

court overruled the objection, concluding that the offense defined by § 566.040 has as an element the use of force, namely the force inherent in sexual penetration.

Sarmiento-Funes appeals, challenging primarily the sentence enhancement but also the constitutionality of part of the illegal-reentry statute.

## II. ANALYSIS

### A.    Sentence Enhancement

The 2002 Sentencing Guidelines, the version in effect at the time of sentencing, provide that the term "crime of violence":

> (I)   means an offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another; and
>
> (II)  includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses (including sexual abuse of a minor), robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling.

U.S.S.G. § 2L1.2 cmt. n.1(B)(ii) (2002).  An offense can be a "crime of violence" either because it has as an element the use of force under paragraph (I) or because it fits within the enumerated list in paragraph (II).  United States v. Rayo-Valdez, 302 F.3d 314, 316-19 (5th Cir. 2002).  The district court enhanced the defendant's sentence based on paragraph (I).  We review the district court's interpretation of the Sentencing Guidelines de novo and any findings of fact for clear error.  United States v. Ocana, 204 F.3d 585, 588 (5th Cir. 2000).

3

1.  <u>Use of force as an element</u>

We begin by observing that Sarmiento-Funes is correct that the Missouri sexual assault statute does not require force in the same sense as does a traditional forcible rape statute.  That is, the sexual assault statute does not require that physical violence, coercion, or threats accompany the sex act.  Instead, the sexual assault statute makes it an offense for a person to "ha[ve] sexual intercourse with another person knowing that he does so without that person's consent."  Mo. ANN. STAT. § 566.040(1).  The crime is a Class C felony that carries a statutory maximum of seven years, including both imprisonment and conditional release.  Id. §§ 558.011(1), 566.040(2).  As noted above, a different Missouri statute outlaws rape that is accomplished with "the use of forcible compulsion."  Id. § 566.030(1).[2]  The statutory maximum sentence for forcible rape under Missouri law is life imprisonment.  Id. § 566.030(2).  Of course, that Missouri has a forcible rape statute that evidently describes a "crime of violence" does not necessarily mean that Missouri's relatively less aggravated sexual assault statute therefore lacks the use of force as an element.  The district court did not find the existence of the two different statutes

_____

[2]     Forcible compulsion is defined as "[p]hysical force that overcomes reasonable resistance; or . . . [a] threat, express or implied, that places a person in reasonable fear of death, serious physical injury or kidnapping of such person or another person . . . ."  Mo. ANN. STAT. § 556.061(12) (West 1999).

4

determinative, and the government agrees with the district court's conclusion that the sexual assault offense involves the "use of force" for purposes of the Guidelines regardless of whether the offense involves overt physical violence, forcible compulsion, or threats.

The Missouri sexual assault statute requires that the perpetrator engage in sexual intercourse, which means "any penetration, however slight." Id. § 566.010(4). The government has at points suggested that the statute involves the use of force merely by virtue of the force inherent in the act of penetration. Its principal support for this contention is United States v. Yanez-Saucedo, 295 F.3d 991 (9th Cir. 2002). That case did not involve the "crime of violence" definition at issue here but instead considered whether a certain Washington sex offense counted as "rape" within the meaning of 8 U.S.C. § 1101(a)(43)(A). The Ninth Circuit held that the term "rape" did not require any force beyond that inherent in the act of penetration. Id. at 996.[3] The court therefore held that

---

[3] In this appeal we are not interpreting the meaning of the term "rape" as it is used in 8 U.S.C. § 1101(a)(43)(A), and so Yanez-Saucedo is not directly on point. The meaning of "rape" might be highly relevant on remand, however: Under § 2L1.2(b)(1)(C), Sarmiento-Funes would be eligible for an eight-level sentence enhancement if his prior offense constituted the "aggravated felony" of "rape" within the meaning of § 1101(a)(43)(A), the same provision at issue in Yanez-Saucedo. A holding that the sixteen-level "use of force" enhancement was improper does not mean that the eight-level "rape" enhancement is unavailable. See infra note 13.

although the state statute did not require forcible compulsion, the defendant's prior offense could still be considered rape because of the force inherent in penetration.  Id. at 995-96.[4]

It is true that the very act of penetration (like less serious and intimate forms of bodily contact) involves "force" in a physics or engineering sense.  See Flores v. Ashcroft, 350 F.3d 666, 672 (7th Cir. 2003) (noting that practically every crime involves "force" in this sense).  Nonetheless, it is not open to us to hold that the force of penetration per se amounts to the "use of force" to which the Sentencing Guidelines refer.  Indeed, a recent decision of this court rejects that precise proposition. See United States v. Houston, 364 F.3d 243, 246 (5th Cir. 2004) (holding that a certain sex crime did not involve the "use of force" despite the fact that the defendant was charged with

---

[4]     The government reads a certain Missouri case, State v. Niederstadt, 66 S.W.3d 12, 15 (Mo. 2002), as demonstrating that the Missouri courts recognize that penetration is itself a type of force.  The defendant, for his part, cites a different Missouri case, State v. Dighera, 617 S.W.2d 524, 533 n.8 (Mo. Ct. App. 1981), that distinguishes between rape and sexual assault and implies that Missouri law does not consider sexual assault "forceful."  Although we look to state law for the elements of an offense, state law does not govern the crucial question here: whether the Missouri sexual assault crime inherently involves the use of force.  That question depends on the meaning of the phrase "use of physical force" in the Sentencing Guidelines, a question of federal law that does not turn on Missouri's particular view of whether penetration inherently involves force.  See United States v. Shannon, 110 F.3d 382, 385, 386 (7th Cir. 1997) (en banc); United States v. Vasquez-Balandran, 76 F.3d 648, 649-50 (5th Cir. 1996); cf. Taylor, 495 U.S. at 590-92 (explaining that the term "burglary" as it is used in a sentence-enhancement statute has a uniform, nationwide meaning, regardless of how individual states label offenses).

6

"caus[ing] his sex organ to contact and penetrate the female sex organ of [the victim]");[5] accord United States v. Meader, 118 F.3d 876, 881-82 (1st Cir. 1997); Shannon, 110 F.3d at 384-85 (both holding that statutory rape offenses did not involve the use of force under U.S.S.G. § 4B1.2); cf. United States v. Velazquez-Overa, 100 F.3d 418, 420 (5th Cir. 1996) (stating that "physical force is not an element of the crime" of sexual contact with a child).  Therefore, we cannot conclude that the act of penetration itself is enough to supply the force required under § 2L1.2 cmt. n.1(B)(ii)(I).

Of course, the Missouri statute does not criminalize mere penetration, but instead outlaws penetration that the perpetrator knows is without the consent of the victim, a crucial consideration.  The government argues that if penetration does not itself entail the use of force, then it becomes forceful when it occurs without consent (even though the bodily contact itself is the same in either case).  Here again we find that our recent Houston decision provides substantial guidance.  Houston held that statutory rape, TEX. PENAL CODE ANN. § 22.011(a)(2) (Vernon 2003), does not have as an element the use of physical force against the person of another.  364 F.3d at 246.  Significantly for present purposes, the Houston panel reasoned that the

---

[5]     Houston was interpreting U.S.S.G. § 4B1.2(a)(1), a Guidelines provision that employs "use of force" language identical to that employed in U.S.S.G. § 2L1.2 cmt. n.1(B)(ii)(I).

statutory rape offense does not involve the use of force because the statute proscribes "consensual" sexual conduct.  Id. Consensual sex, according to Houston, does not involve the use of force, even though the sex happens to be illegal.  Houston's holding that consensual sex does not involve the use of force does not compel the proposition that nonconsensual intercourse does involve the use of force, but such a result would not be inconsistent with Houston's reasoning.

In applying Houston to the case at hand, we observe that Houston's statement that statutory rape is consensual is in one sense counter-intuitive, for it is often said that statutory rape is considered rape precisely because the minor victim of the crime is, as a matter of law, deemed incapable of giving consent. See Turner v. State, 246 S.W.2d 642, 643 (Tex. Crim. App. 1952); Duby v. State, 735 S.W.2d 555, 557 (Tex. App.–Texarkana 1987, pet. ref'd) ("A person under the age of seventeen is legally incapable of giving consent to intercourse."); see also 3 CHARLES E. TORCIA, WHARTON'S CRIMINAL LAW § 285, at 68-69 (15th ed. 1995) (citing cases from various jurisdictions).  But cf. Garcia v. State, 661 S.W.2d 96, 99 (Tex. Crim. App. 1983) (McCormick, J., concurring) ("Children under seventeen are not presumed by the law to be incapable of consent, their consent is simply irrelevant.").  What Houston's statements regarding consent must be taken to mean is that the sex at issue in statutory rape may be consensual as a matter of fact, even if the law disregards or

8

countermands the victim's decision.  The rule that emerges from Houston, therefore, is that intercourse does not involve the use of force when it is accompanied by consent-in-fact.

Although the Missouri sexual assault statute speaks of intercourse "without consent," the state statutes explicitly distinguish between "assent" and "consent," providing that "assent" sometimes does not count as "consent."[6]  The Missouri sexual assault statute therefore reaches intercourse to which the victim assents, though that assent is a legal nullity, such as when it is the product of deception or a judgment impaired by intoxication.  But under the rule of Houston, described above, illegal intercourse with consent-in-fact, i.e. assent, does not

---

[6]     Section 556.061(5) of the Missouri Code provides:

[C]onsent or lack of consent may be expressed or implied.  Assent does not constitute consent if:

(a) It is given by a person who lacks the mental capacity to authorize the conduct charged to constitute the offense and such mental incapacity is manifest or known to the actor; or

(b) It is given by a person who by reason of youth, mental disease or defect, or intoxication, is manifestly unable or known by the actor to be unable to make a reasonable judgment as to the nature or harmfulness of the conduct charged to constitute the offense; or

(c) It is induced by force, duress or deception[.]

This list of situations in which assent does not equal consent does not include the scenario in which the perpetrator incapacitates the victim, such as by drugging the victim without her knowledge.  Such conduct would fall under Missouri's forcible rape statute.  See MO. ANN. STAT. § 566.030(1).

involve the use of force.[7]  Since some (though not all) methods

of violating the Missouri statute do not require the use of

physical force against the victim, the statute therefore does not

have, <u>as an element</u>, the use of physical force against the person

of another.  <u>See</u> <u>United States v. Vargas-Duran</u>, 356 F.3d 598, 605

(5th Cir. 2004) (en banc).[8]

Our conclusion finds support in the Sixth Circuit's decision

in <u>United States v. Arnold</u>, 58 F.3d 1117 (6th Cir. 1995).  There,

the question was whether a Tennessee conviction for assault with

intent to commit sexual battery involved the "use, attempted use,

or threatened use of physical force" under U.S.S.G. § 4B1.2.  The

court observed that sexual battery could, according to Tennessee

law, be accomplished in a number of disparate ways, namely

---

[7]    The dissent argues that the Missouri offense involves the use of force because the victim is unable to give consent-in-fact.  We respectfully disagree, inasmuch as § 556.061(5) explicitly contemplates that the victim can manifest "assent," i.e. consent-in-fact, without that manifestation qualifying as legal consent.  Moreover, we do not find persuasive the dissent's approach to intercourse induced by deception, which the statute also explicitly contemplates.  The victim of deception manifests consent-in-fact, though it is legally vitiated.  We do not believe that, under <u>Houston</u>, penetration that occurs under such a circumstance involves the use of physical force against the victim.

[8]    Since our decision relies on <u>Houston</u>'s distinction between consent-in-fact and consent-in-law, we leave open the question whether intercourse not accompanied by extrinsic force or threats could nonetheless be said to involve the "use of force" for Guidelines purposes when there is no factual assent to the sex act.  That is, it is possible that there could be a "use of force" for Guidelines purposes even when there is no "force" as that term is normally understood in connection with forcible rape laws.

10

through: (1) the use of force or coercion, (2) the mental deficiency or physical incapacity of the victim, or (3) fraud. Id. at 1121-22. The court concluded that while the "use of force" for Guidelines purposes was involved in some methods of violating the statute, force was not required in all cases; in particular, the court pointed to fraud as a manner of violating the statute that "would not involve an element of force or attempted or threatened force." Id. at 1122; see also 2 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 17.1(a), at 605 (2d ed. 2003) (referring to fraud as an "alternative[]" to force in the rape context). Deception is likewise one of the methods of committing sexual assault under Missouri law, see MO. ANN. STAT. § 556.061(5)(c), and we agree that a sex offense accomplished in this manner does not involve the "use of force" within the meaning of the applicable Sentencing Guidelines.

In its final argument that the Missouri offense requires the use of force, the government contends that unconsented-to sex is itself a form of bodily injury. While we are sympathetic to the sentiment the government is expressing, we cannot adopt this view of the meaning of bodily injury. To begin with, as we observed earlier, the Missouri offense reaches some assented-to sex.[9] The

---

[9] This factor distinguishes the present case from United States v. Brown, the Seventh Circuit case on which the government relies in arguing that the Missouri statute involves physical injury. Brown held that "forced nonconsensual sex with strangers is 'conduct that presents a serious potential risk of physical injury to another'" under the Armed Career Criminal Act, 18

11

offense is certainly a gross and outrageous affront to the victim in any case.  But to say that the Missouri statute per se involves bodily injury, while a way of amplifying one's condemnation of the crime, reaches beyond the normal understanding of the term "bodily injury."  This court has previously considered the Texas crime of sexual contact with a child--an offense that likely affects the victim as seriously as does the crime at issue here--and yet we have said that that sexual contact does not amount to the use of physical force.  See Velazquez-Overa, 100 F.3d at 420.  Some sex offenses do include an element of bodily injury (as that term is normally understood), e.g., LA. REV. STAT. ANN. § 14:43.2 (West 1997) (aggravated sexual battery); TEX. PENAL CODE ANN. § 22.021(a)(2)(A)(i) (Vernon 2003) (aggravated sexual assault), but this Missouri statute does not.

2.  "Forcible sex offenses"

Although the district court enhanced the defendant's sentence under paragraph (I) of § 2L1.2's "crime of violence" definition, the government urges that we can also affirm the enhancement on the alternative basis that the defendant's prior conviction--whether or not it satisfies paragraph (I)'s general

---

U.S.C. § 924(e)(2)(B)(ii) (2000).  See 273 F.3d 747, 750 (7th Cir. 2001).  In reaching that conclusion, the court observed that, in addition to the risk of collateral injuries, the compelled sex act could itself be considered a type of "physical injury."  Id. at 750-51.

12

definition--is an offense specifically enumerated in paragraph (II), namely a "forcible sex offense."

Neither side has been able to provide us with definitive guidance on the meaning of "forcible sex offense" as that term is used in § 2L1.2. The Sentencing Guidelines and their commentary do not define the term. The parties agree that certain crimes, such as forcible rape in the traditional sense, clearly count as "forcible sex offenses," and they also agree that certain other crimes involving wholly consensual sex (such as adultery) are not "forcible sex offenses." The particular crime at issue here, MO. ANN. STAT. § 566.040, falls somewhere in the middle of those two agreed extremes. At certain points, the parties treat the question whether the offense is a "forcible sex offense" as a corollary to the question addressed earlier, i.e. whether the prior offense has as an element the use of force for purposes of paragraph (I): If the sexual assault offense does not involve the use of force, then it is not a "forcible sex offense"; if it does require the use of force, then it is a "forcible sex offense." They also, however, marshal a few arguments that would independently arrive at a definition for the phrase.

The government's primary argument regarding the meaning of "forcible sex offense" as that term is used in § 2L1.2 is that the same phrase is used in a different section of the Guidelines in a context in which (says the government) it is apparent that forcible compulsion is not required. In particular, the

13

government points out that the commentary to the Guidelines section applicable to certain "sexual abuse crimes"--crimes that do not necessarily require threats or forcible compulsion in the brute sense--states that those crimes "are crimes of violence." U.S.S.G. § 2A3.1 cmt. bkgrd. (2003).[10] At the time that this particular Guideline was promulgated, over fifteen years ago, there was only one definition of "crime of violence" in the Guidelines, namely the definition provided in § 4B1.2. The 1987 commentary to § 4B1.2, in turn, states that its definition of "crime of violence" encompasses, among many other things, "forcible sex offenses." Therefore, according to the government, this series of cross-references tells us that a crime does not require forcible compulsion for it to be a "forcible sex offense."

The government's argument on this score is logically faulty. From the propositions (1) that certain "sexual abuse crimes" are "crimes of violence," and (2) that "forcible sex offenses" are

---

[10] One of the crimes covered by this Guidelines section is 18 U.S.C. § 2242, which can be violated, inter alia, by:

> engag[ing] in a sexual act with another person if that other person is--
>
> (A) incapable of appraising the nature of the conduct; or
>
> (B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act . . . .

18 U.S.C. § 2242(2) (2000).

14

also "crimes of violence," it does not follow that the specified "sexual abuse crimes" are "forcible sex offenses."  It is also notable that the definition of "crime of violence" in the 1987 version of § 4B1.2 relied on 18 U.S.C. § 16, which in turn defines "crime of violence" as either a crime that has as an element the use of force or a crime that by its nature poses a substantial risk that force may be used.  Therefore, the "sexual abuse crimes" discussed in § 2A3.1 could qualify as "crimes of violence" under 18 U.S.C. § 16 as long as they involved a substantial risk that force would be used.[11]  This web of related provisions therefore does not support the logical inference the government suggests.

Relatively few appellate cases have discussed the meaning of "forcible sex offenses" for Guidelines purposes.  Almost all of those that do discuss it, do so in connection with another

---

[11]    Indeed, a number of cases have held that various sex offenses satisfy 18 U.S.C. § 16's definition precisely because they involve a substantial risk that force will be used, even if they do not necessary require the use of force as an element. See, e.g., Velazquez-Overa, 100 F.3d at 420-22.
    Section 4B1.2 has been amended since 1987, but not in any way that helps the government's argument.  The section now defines "crime of violence" to mean an offense that has the use of force as an element or an offense that poses a serious potential risk of physical injury.  See U.S.S.G. § 4B1.2(a) (2003).  Courts frequently hold that certain sex offenses are "crimes of violence" under this Guidelines section because the crimes present a risk of injury, even though they do not involve the use of force.  See, e.g., United States v. Kirk, 111 F.3d 390, 394 (5th Cir. 1997) (holding that sexual contact with a child did not involve the use of force but did carry a serious potential risk of physical injury).

enumerated crime of violence, "sexual abuse of a minor." The reason for the connection is that the 2001 version of § 2L1.2's "crime of violence" definition links these two offenses, stating that "crime[s] of violence . . . include[] . . . forcible sex offenses (including sexual abuse of a minor)." Statutes involving child sexual abuse typically do not require violence or threats, merely improper contact. One could therefore argue that "forcible sex offenses," which "include" such crimes, likewise do not require violent force. Equally, one could also reconcile the two offenses by contending that "sexual abuse of a minor" qualifies as a crime of violence only when it is "forcible." This court, like others, has rejected the latter argument, reasoning that "[s]exual abuse of a minor--forcible or not-- constitutes a crime of violence." Rayo-Valdez, 302 F.3d at 316; see also United States v. Pereira-Salmeron, 337 F.3d 1148, 1152 (9th Cir. 2003) (explaining that sexual abuse of a minor is a crime of violence regardless of "whether it includes--or even explicitly excludes--'force' as an element"). That is, courts take the view that sexual abuse of a minor is essentially sui generis and does not need to be otherwise "forcible." And indeed, in the 2003 version of § 2L1.2's "crime of violence" definition, the Sentencing Commission has de-coupled the two offenses, listing each separately. See U.S.S.G. § 2L1.2 cmt. n.1(B)(iii) (2003). This change was intended to "make[] clear" that offenses like sexual abuse of a minor qualify as crimes of

16

violence regardless of whether they involve the use of force. See U.S.S.G. app. C, amend. 658, at 401-02 (2003). None of this tells us what a "forcible sex offense" is, however, except perhaps that "sexual abuse of a minor" might not otherwise qualify as one.

In the absence of an authoritative definition of "forcible sex offense," we believe that the most natural reading of the phrase suggests a type of crime that is narrower than the range of conduct prohibited under § 566.040. In particular, it seems that the adjective "forcible" centrally denotes a species of force that either approximates the concept of forcible compulsion or, at least, does not embrace some of the assented-to-but-not-consented-to conduct at issue here. See BLACK'S LAW DICTIONARY 657 (7th ed. 1999) (defining "forcible" as "[e]ffected by force or threat of force against opposition or resistance"). We recognize that in the last few decades, a number of jurisdictions have modernized and liberalized their rape laws (or the judicial constructions of them), in a few cases even eliminating the force requirement. E.g., State ex rel. M.T.S., 609 A.2d 1266, 1276-77 (N.J. 1992). A significant number of states, like Missouri, have supplemented statutes requiring force, threats, or compulsion with separate sexual assault statutes that criminalize certain unconsented-to (or legally unconsented-to) intercourse that does not involve extrinsic force. See, e.g., FLA. STAT. ANN. § 794.011(5) (West 2000 & Supp. 2003); N.Y. PENAL LAW § 130.20

17

(McKinney 2004); WISC. STAT. ANN. § 940.225(3) (West 1996 & Supp. 2003). To our minds, these facts underscore that when one specifically designates a sex offense as a "forcible" sex offense, one probably does so in order to distinguish the subject sex offense as one that does require force or threatened force extrinsic to penetration.[12] Thus, the phrase "forcible sex offense" used in paragraph (II) of § 2L1.2 cmt. n.1(B)(ii) may well be a term of art that encompasses a narrower range of conduct than does paragraph (I)'s general definition referring to crimes that "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another." See supra note 8. In any event, regardless of the precise boundaries of the phrase, we do not think that all of the conduct criminalized by § 566.040 can be considered a "forcible sex

---

[12] See, e.g., Michael M. v. Superior Court, 450 U.S. 464, 501 n.8 (1981) (Stevens, J., dissenting) (referring to "forcible rape . . . and nonforcible, but nonetheless coerced, sexual intercourse" (emphasis added)); Soto v. Superior Court, 949 P.2d 539, 543-44 (Ariz. Ct. App. 1997) (holding that a sexual assault is a "forcible sexual assault" when the victim, in addition to not consenting, is coerced by the use or threatened use of force); In re Jessie C., 565 N.Y.S.2d 941, 943 (App. Div. 1991) (stating that a sexual misconduct statute criminalizing sex without valid consent "proscribes both forcible and nonforcible sexual intercourse"); State v. Philbrick, 402 A.2d 59, 63 (Me. 1979) (holding that a crime qualifies as a "forcible sex offense" when it involves "force in fact"). These authorities are relevant--just like dictionaries and other interpretive aids-- because they provide evidence of how speakers typically use the term we are interpreting. We do not claim that "forcible sex offense" is always used in this way, but we believe that the usage reflected in the above citations illustrates the central meaning of the term.

18

offense."  Therefore, we cannot affirm the defendant's sentence on this alternative basis.

On remand, the government is free to pursue the eight-level "aggravated felony" sentence enhancement.  We express no opinion regarding whether that enhancement would be proper.[13]

## B.    Constitutionality of 8 U.S.C. § 1326(b)

8 U.S.C. § 1326(a) makes it a crime, punishable by up to two years' imprisonment, for an alien to reenter the country without permission after having previously been removed.  Section 1326(b)(1)-(2) provides that aliens whose prior removal followed a conviction of certain crimes may be imprisoned for substantially longer terms.  In Almendarez-Torres v. United States, the Supreme Court held that § 1326(b) set forth sentencing factors rather than separate offenses, and that the statute was constitutional.  See 523 U.S. 224, 235, 247 (1998).

---

[13]    As noted earlier, supra note 3, one route to the eight-level "aggravated felony" enhancement would be to show that Sarmiento-Funes had been convicted of "rape" within the contemporary meaning of that term.  See 8 U.S.C. § 1101(a)(43)(A) (listing "rape" as an "aggravated felony"); Taylor, 495 U.S. at 598 (holding that the term "burglary" in a sentence enhancement statute should be understood according to its "generic, contemporary meaning").  Indeed, the Ninth Circuit's Yanez-Saucedo decision, heavily relied upon by the district court and the government, actually involves the meaning of "rape" in the context of § 1101(a)(43)(A).  Even as traditionally conceived, the law of rape recognized certain cases in which actual force was not required.  Therefore, our holding today regarding the "use of force" language in U.S.S.G. § 2L1.2 cmt. n.1(B)(ii) does not necessarily mean that Sarmiento-Funes did not commit "rape" for purposes of § 1101(a)(43)(A).  It is for the district court to resolve in the first instance whether an eight-level enhancement is proper.

19

Raising an objection that was not raised below, Sarmiento-Funes contends that 8 U.S.C. § 1326(b) is unconstitutional, on its face and as applied, in light of Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), in which the Supreme Court held that facts that increase a sentence beyond the statutory maximum must as a general matter be found by a jury. But Apprendi explicitly refrained from overruling Almendarez-Torres, and this circuit has consistently rejected Sarmiento-Funes's position, stating that it is for the Supreme Court to overrule Almendarez-Torres. See, e.g., United States v. Dabeit, 231 F.3d 979, 984 (5th Cir. 2000). Sarmiento-Funes concedes that the issue is foreclosed by circuit precedent, and he presents the issue solely to preserve it for possible further review.

## III. CONCLUSION

For the foregoing reasons, the defendant's conviction is AFFIRMED and his sentence is VACATED. The case is REMANDED to the district court for resentencing.

ENDRECORD

20

EMILIO M. GARZA, Circuit Judge, dissenting:

I conclude that the Missouri sexual assault statute, which punishes a person for having "sexual intercourse with another person knowing that he does so without that person's consent," MO. ANN. STAT. § 566.040(1) (West 1999), is a crime of violence under U.S.S.G. § 2L1.2 cmt. n.1(B)(ii) (2002), because it has as an element the use of force. I accept, for purposes of this opinion, the majority opinion's rule, based upon the rationale in *United States v. Houston*, 364 F.3d 243 (5th Cir. 2004), that "intercourse does not involve the use of force when it is accompanied by consent-in-fact." However, I do not accept the majority opinion's holding that the Missouri sexual assault statute does not require the use of force.

The majority opinion's holding is based upon its conclusion that a defendant can be convicted under the Missouri sexual assault statute in cases where the victim gave consent-in-fact. This conclusion, based on *Houston*, necessarily assumes that a victim under the Missouri sexual assault statute can give consent-in-fact. *Houston* turned on the fact that an underage victim of statutory rape was capable of giving consent-in-fact to the sexual intercourse. In contrast, as explained below, a victim under the Missouri sexual assault statute is, by definition and as a matter of law, unable to give consent-in-fact to sexual intercourse. *See* MO. ANN. STAT. § 556.061(5) (West

21

1999).  Therefore, sexual assault under the Missouri statute involves the use of force and is a crime of violence.

*Houston* holds that a statutory rape victim can give consent-in-fact to sexual intercourse even though the victim cannot give legal consent, and, as a result, that statutory rape is not a crime of violence.  *See Houston*, 364 F.3d at 247. *Houston* distinguished between legal consent and consent-in-fact based upon the assumption that the victim was able to consciously decide whether or not to engage in sexual intercourse with the defendant, and that the intercourse would be consensual were it not for her age.  *See id*. at 247-48.  That is, consent-in-fact only accompanies sexual intercourse in those situations where the parties were able to decide for themselves whether or not they wished to participate.

However, under the Missouri sexual assault statute a victim cannot give consent-in-fact because, by definition, the victim is unable to decide whether to participate in the sexual intercourse.  In Missouri assent to sexual intercourse is not legal consent in situations where the defendant knew (or it was manifest) that the victim "lacked the mental capacity to authorize" the sexual intercourse or because of certain specified impairments was "unable to make a reasonable judgment as to the nature or harmfulness of" the sexual activity.  MO. ANN. STAT. § 556.061(5) (a), (b) (West 1999).

Under the Missouri statutory definition of consent, even though the victim may have demonstrated some physical assent to the sexual intercourse, the victim was "unable to make a reasonable judgment" or "lacked the mental capacity" to do so and thus did not make the mental decision to engage in intercourse.[14] *Id.* Furthermore, Missouri's definition of consent requires that the defendant either knew of the impairment in the victim's cognitive ability or that the condition was "manifest." *Id.* If a person is convicted under Missouri's sexual assault statute, the victim was unable to give consent-in-fact and the defendant knew so.[15] Such a conviction involves a use of force. Therefore, I believe that a Missouri sexual assault conviction is a crime of violence for purposes of the 16-level enhancement under § 2L1.2.

I respectfully dissent.

---

[14] For example, in normal circumstances a twenty-five year old woman is able to consent to sex. However, under Missouri law, if she is "unable to make a reasonable judgment" due to intoxication, for example, she is unable to consent-in-fact to sexual intercourse.

[15] The Missouri definition of consent also provides that assent does not constitute legal consent when "[i]t is induced by force, duress or deception." MO. ANN. STAT. § 556.061(5)(c) (West 1999). Even assent procured by means of deception is not consent-in-fact because the defendant deprives the victim of the opportunity to make a mental decision whether or not to participate in the sexual intercourse. The victim is equally unable to give consent-in-fact whether such incapacity is caused by intoxication, mental retardation, or deception.