In the

# United States Court of Appeals

## For the Seventh Circuit

No. 11-1695

CARNELL BROWN,

*Petitioner-Appellant*,

*v.*

RICARDO RIOS, Warden,

*Respondent-Appellee*.

Appeal from the United States District Court
for the Central District of Illinois.
No. 1:10-cv-01374-MMM—**Michael M. Mihm**, *Judge*.

ARGUED JULY 11, 2012—DECIDED AUGUST 20, 2012

Before POSNER, MANION, and TINDER, *Circuit Judges*.

POSNER, *Circuit Judge*. The principal although not only issue presented by this appeal is the often vexing question of whether a conviction used to enhance a defendant's sentence under the Armed Career Criminal Act is a "violent felony" within the meaning of the Act. 18 U.S.C. § 924(e). The Act defines the term to mean either a felony that "has as an element the use, attempted use, or threatened use of physical force against the person

of another" or "is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*" §§ 924(e)(2)(B)(i), (ii). It is the catchall phrase, which we have italicized, that presents problems of application.

Carnell Brown was convicted in 2000 of being a felon in possession of a gun, § 922(g)(1), an offense for which the maximum sentence is normally 10 years in prison. § 924(a)(2). The government urged that he be sentenced to a minimum of 15 years on the ground that he had three previous convictions for a violent felony or a felony drug offense, and if this was right then the Armed Career Criminal Act indeed required a sentence at least that long. § 924(e)(1). We held that it was right, *United States v. Brown*, 273 F.3d 747 (7th Cir. 2001), and on remand Brown was sentenced to 264 months in prison, and did not appeal.

In 2010, following an unsuccessful collateral attack on his sentence under 28 U.S.C. § 2255 (the federal prisoner's substitute for habeas corpus), he mounted a new collateral attack under the federal habeas corpus statute, 28 U.S.C. § 2241, in reliance on the Supreme Court's decision in *Begay v. United States*, 553 U.S. 137 (2008). There the Court had held that driving under the influence is not within the catchall provision of the Armed Career Criminal Act because a crime within the catchall "typically involve[s] purposeful, 'violent', and 'aggressive' conduct." *Id*. at 144-45. The district court in this case, seconded by the government, held that section 2241 was a proper vehicle for Brown's attack on his sentence, but

went on to hold that he indeed had been convicted of three violent felonies or serious drug offenses, and so his sentence stood, and he has appealed.

The government has conceded that Brown can use the habeas corpus statute to challenge the legality of his sentence. Normally a federal prisoner is confined to his remedy under 28 U.S.C. § 2255, but he may petition under section 2241 instead if his section 2255 remedy is "inadequate or ineffective to test the legality of his detention." § 2255(e). *In re Davenport*, 147 F.3d 605, 610-12 (7th Cir. 1998), set forth three conditions for this exception to apply. Two clearly are satisfied in this case. First, *Begay* was not a constitutional case, but a statutory-interpretation case, so Brown could not have invoked it by means of a second or successive section 2255 motion. 28 U.S.C. § 2255(h)(2); *United States v. Wyatt*, 672 F.3d 519, 522 (7th Cir. 2012). Second, although he could not have invoked it in his first section 2255 motion either, because *Begay* hadn't been decided, compare *In re Davenport*, *supra*, 147 F.3d at 609, *Begay* is applicable retroactively, *id*. at 610; *Welch v. United States*, 604 F.3d 408, 415 (7th Cir. 2010), and therefore he could invoke it by a later motion, provided (because of the bar in section 2255(h)(2) to second or successive section 2255 motions) that the later motion wasn't a section 2255 motion. It wasn't; it was a section 2241 motion.

The third condition is that Brown's sentence enhancement under the Armed Career Criminal Act, because based on a conviction for a crime of which he was innocent, have been a grave enough error to be deemed

a miscarriage of justice corrigible therefore in a habeas corpus proceeding. *Narvaez v. United States*, 674 F.3d 621, 623 (7th Cir. 2011), held that such an error "was indeed a miscarriage of justice," even though in that case it was a violation merely of the career-offender sentencing guidelines, rather than a statutory violation. *Narvaez* was a case in which the guidelines had been mandatory when the defendant was sentenced; we left open in *United States v. Wyatt*, *supra*, 672 F.3d at 523-24, whether the result might be different now that they are merely advisory. We needn't try to resolve the issue in this case.

*Davenport*, unlike *Narvaez*, had been a case in which a defendant (Nichols, Davenport's codefendant) had been innocent of the crime of which he had been convicted (use of a firearm in connection with a drug offense), whereas the present case, like *Narvaez*, involves a sentencing error. A number of cases, before and after and contrary to *Narvaez*, specify "actual innocence" of the crime of which the defendant was convicted as one of the conditions for allowing a challenge under the habeas corpus statute. See, e.g., *Unthank v. Jett*, 549 F.3d 534, 536 (7th Cir. 2008); *In re Bradford*, 660 F.3d 226, 230 (5th Cir. 2011) (per curiam); *Kinder v. Purdy*, 222 F.3d 209, 213-14 (5th Cir. 2000) (per curiam). We didn't use the term in *Davenport*, although it was, as we said, an "actual innocence" case.

But these cases involved, like *Narvaez*, violations of the sentencing guidelines rather than of the Armed Career Criminal Act. A sentence that violates a statute, as

distinct from a sentence permitted by a statute though more severe than authorized by the guidelines, could well be thought an error grave enough to warrant relief in a habeas corpus proceeding—a "fundamental error equivalent to actual innocence," *Taylor v. Gilkey*, 314 F.3d 832, 836 (7th Cir. 2002)—whereas now that the guidelines are merely advisory, a sentencing judge, while still required to calculate the guidelines sentence, is free to give a heavier (or for that matter a lighter) sentence.

But we needn't pursue the issue whether or what sentencing errors can be corrected in a habeas corpus proceeding further in this case, in view of the government's concession.

And so we come to the merits, where the principal issue is whether the felony of which Brown was convicted in an Illinois court in 1983—namely "compel[ling] a person to become a prostitute," Ill. Rev. Stat. 1983, ch. 38, § 11-16(a)(1)—is a violent felony within the meaning of the Armed Career Criminal Act. Our 2001 decision in the direct appeal from Brown's sentence describes the offense as "a situation where one person, for money, compels another to submit to nonconsensual sex with a third person. That situation, unlike many cases of statutory rape . . ., necessarily involves unconsented-to activity that is, by itself, a type of physical injury." 273 F.3d at 751. In other words, paying a person to engage in sex is an injury to that person. This formula cannot be squared with the definition of a violent felony in the *Begay* case, decided after our first *Brown* decision.

Later (that is, after the *Begay* decision), it is true, the Court, commenting on driving under the influence—the crime held in *Begay* not to be a violent felony—said that a crime "akin to strict liability, negligence, and reckless-ness crimes" is not a violent felony. *Sykes v. United States*, 131 S. Ct. 2267, 2276 (2011). But this can't be read to mean that every intentional crime *is* a violent felony (tax evasion? price fixing?); that would make no sense, and the Court immediately added that a violent felony in the catchall category is one that is "similar in risk to the listed crimes," *id.*, which means crimes such as bur-glary and arson. Nor does *Sykes* back away from the Court's holding in *Chambers v. United States*, 555 U.S. 122 (2009), that failing to report to prison when ordered, though it is an intentional felony, is not a violent one, because the risk of violence in efforts to apprehend such no-shows has not been shown to be significant.

Neither has it been shown that compelling a person, within the meaning of the Illinois statute, to become a prostitute necessarily creates a risk of violence to her. There would be a risk—more than a risk, an actuality—of violence if the compulsion required to convict of the crime were physical coercion, as in our recent case of *United States v. Cephus*, 684 F.3d 703 (7th Cir. 2012), where defendants had beaten and whipped women to force them to engage in interstate prostitution in violation of federal law. But as far as we have been able to learn, all that the Illinois felony of compelling prostitu-tion requires be shown, and all that the typical case involves, is inducing women (perhaps men also) to engage in prostitution by promising them money or

other things of value, such as mind-altering drugs, for doing so.

As of 1961, Illinois defined as "pandering" the conduct of anyone who "for money" either "compels a female to become a prostitute" or "arranges or offers to arrange a situation in which a female may practice prostitution." The first offense, "pandering by compulsion," carried a sentence of 1 to 10 years; the second, "pandering other than by compulsion" (that is, "pandering by arranging"), a sentence only of 0 to 5 years. 720 ILCS 11-16(1)(b). In 1977 the statute was amended, and it was that amended version under which Brown was convicted. (The statute now appears, with an irrelevant further amendment, at 720 ILCS 5/11-14.3.) The only material change between the 1961 and 1977 versions was the punishment. No longer was compulsion punished more heavily than arranging. Both were now to be punished as Class 4 felonies, which prescribe a sentencing range of 1 to 3 years. Ill. Rev. Stat. 1973, ch. 38, § 1005-8-1(b)(5). Thus the punishment for compulsion was reduced to the punishment for arranging.

The fact that it probably is easier to prove arrangement than compulsion may explain why we can't find *any* cases other than Brown's in which anyone has been convicted of compulsion since the 1977 amendment. Even more surprising, we can't find any earlier such convictions either. All we have is a tiny shard of legislative history—a 1961 comment by a Joint Committee that had been formed by the Governor and Supreme Court of Illinois in conjunction with the Illinois and

Chicago Bar Associations to draft a new criminal code for Illinois. The comment states that the crime of compelling prostitution "deals with the use of some kind of coercion to place the woman in the trade or to keep her there," but that "this description accords more with the historical view of pandering," and that "while at the turn of the century the coercion when employed probably arose from financial destitution, today coercion probably arises more frequently from drug addiction." 720 ILCS 5/11-16, Committee Comments—1961, at 466 (Smith-Hurd 2002). The implication is that the "compulsion" is of the "here's an offer you can't resist" character.

Indeed that may be the only compulsion that the statute reaches, because of the statute's limited sentencing range. If a panderer uses physical coercion, as in the *Cephus* case, he is committing a more serious crime than one punishable by a maximum sentence of three years in prison, and will doubtless be charged accordingly. This may be another reason why we can't find prosecutions for compelling prostitution other than the prosecution of Brown.

Maybe, as the government hints, the violence to which such pandering gives rise is not by the panderer but by the prostitute's customer, as we noted in *United States v. Patterson*, 576 F.3d 431, 441-42 (7th Cir. 2009), a case that involved transporting a minor in interstate commerce with the intent that she engage in prostitution. Such transportation endangers the minor, but would endanger an adult prostitute as well, given the well-documented frequency of assaults against prostitutes

by their customers. E.g., Kaethe Morris Hoffer, "A Response to Sex Trafficking Chicago Style: Follow the Sisters, Speak Out," 158 *U. Pa. L. Rev.* 1831, 1838-39 (2010); Jody Raphael and Jessica Ashley, "Domestic Sex Trafficking of Chicago Women and Girls" (Ill. Crim. Justice Information Authority, May 2008), www.enddemandillinois.org/sites/default/files/ICJIA_Research_Jody.pdf; Steven D. Levitt et al., "An Empirical Analysis of Street-Level Prostitution" 3, 14 (Sept. 2007), http://economics.uchicago.edu/pdf/Prostitution%205.pdf?q=venkatesh; Donna M. Hughes, "Best Practices to Address the Demand Side of Trafficking" 10-12 (Women's Studies Program, University of Rhode Island, August 2004), www.uri.edu/artsci/wms/hughes/demand_sex_trafficking.pdf; David G. Sommer, "Recent Decisions," 60 *Md. L. Rev.* 994, 1011 (2001); Evelina Giobbe et al., "Impressions of a Public Policy Initiative," 16 *Hamline J. Pub. Law & Policy* 1, 13 n. 69 (1994); but see Ronald Weitzer, "Sex Trafficking and the Sex Industry: The Need for Evidence Based Theory and Legislation," 101 *J. Crim. L. & Criminology* 1337, 1362-63 (2011). (The Web sites were visited on August 5, 2012.) But if the possibility of such an assault makes compelling prostitution a violent felony, it likewise makes arranging prostitution a violent felony, which no one is arguing.

Furthermore, if compelling prostitution typically involved the use or threat of violence, it would be punishable by a heavier sentence, and it is not. All that compulsion under the Illinois statute may mean is paying a person to become a prostitute, whereas arranging could mean managing a brothel in which the prostitutes are paid by the johns rather than by the

manager, who merely takes a cut of their earnings, so that there is no element of financial inducement. This interpretation is further supported by comparison of the maximum sentence for compulsion—three years—with the maximum sentences that Illinois law decrees for what are clearly "violent felonies" within the meaning of the Armed Career Criminal Act. For residential burglary the maximum is 15 years, for residential arson also 15 years, for intimidation (Illinois's counterpart to extortion in federal law, *United States v. Unthank*, 109 F.3d 1205, 1210 (7th Cir. 1997), a listed offense in the Armed Career Criminal Act) 10 years, and for possession of explosives 30 years. 720 ILCS 5/19-3, 5/20-1.2, 5/12-6, 5/20-2; 730 ILCS 5/5-45-30, 40. We conclude that compelling a person to become a prostitute has not been shown to be a violent felony within the meaning of the Armed Career Criminal Act.

There is, however, a second merits issue: whether a 1993 conviction of Brown for "armed violence" under Illinois law, defined as "committing any felony defined by Illinois law while armed," Ill. Rev. Stat. 1978, ch. 38, § 33A-2—the felony was possession of illegal drugs—was a violent felony within the meaning of the federal Act because of the frequent linkage remarked in many cases between guns and drugs. See, e.g., *United States v. Fife*, 624 F.3d 441, 447-48 (7th Cir. 2010); *United States v. Cunningham*, 517 F.3d 175, 179 (3d Cir. 2008); *United States v. Crawford*, 130 F.3d 1321, 1323 (8th Cir. 1997). If so, Brown has three qualifying convictions even if the pandering conviction, as we hold, doesn't count.

We would agree with the government and the district court that the felony that Brown had been convicted of committing while armed was a violent felony if it had involved the *sale* of drugs. *United States v. Fife*, *supra*, 624 F.3d at 447-48. But it had involved merely possession. Originally, it is true, he had also been charged with manufacturing and delivering the drugs, but that charge had been dropped and the government does not rely on it; so, as far as we know—and as we must therefore assume for purposes of deciding this appeal—Brown was a consumer of drugs who happened to own a gun. The more than 22 million Americans estimated to consume illegal drugs, see Substance Abuse and Mental Health Services Administration, "Results from the 2010 National Survey on Drug Use and Health: Summary of National Findings" (NSDUH Series H-41, HHS Publication No. (SMA) 11-4658, 2011), www.oas.samhsa.gov/NSDUH/ 2k10NSDUH/2k10Results.htm (visited Aug. 5, 2012), and the 57 million Americans estimated to own guns, see L. Hepburn et al., "The U.S. Gun Stock: Results from the 2004 National Firearms Survey," 13 *Injury Prevention* 15 (2007), are overlapping sets. And while there is evidence of a connection between "Congress's attempt to keep firearms away from habitual drug users and its goal of reducing violent crime," *United States v. Yancey*, 621 F.3d 681, 686 (7th Cir. 2010), it has not been shown that the mere possession of a gun by a drug user (who might not be a habitual user, that is, an addict) can be described as purposeful, violent, or aggressive conduct within the meaning of *Begay*.

For these reasons, we reverse the district judge's decision and remand with instructions to reduce Brown's

sentence to 10 years' imprisonment. This will require his release, though the district judge may want to consider releasing him on bail in order to protect the government's right to seek review of our decision by the Supreme Court.

REVERSED AND REMANDED.