# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1073
_____

United States of America

*Appellee*

v.

John Lee Bartel

*Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: October 15, 2012
Filed: October 23, 2012

_____

Before RILEY, Chief Judge, ARNOLD and GRUENDER, Circuit Judges.

_____

ARNOLD, Circuit Judge.

John Lee Bartel pleaded guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), and was sentenced to 15 years in prison. The district court[1] ruled that Mr. Bartel's four prior state convictions for fleeing police in

_____

[1] The Honorable Donovan W. Frank, United States District Judge for the District of Minnesota.

a motor vehicle constituted violent felonies, thus making him an armed career criminal subject to a 15-year minimum sentence under the Armed Career Criminal Act (ACCA). *See* 18 U.S.C. § 924(e). Mr. Bartel challenges this ruling and argues that the government breached its plea agreement. We affirm.

Mr. Bartel's criminal record included four Minnesota felony convictions for fleeing police in a motor vehicle. *See* Minn. Stat. § 609.487, subd. 3. In reaching a plea agreement, Mr. Bartel and the government relied on our holding in *United States v. Tyler*, 580 F.3d. 722, 724-26 & 724 n.3 (8th Cir. 2009), that a violation of the Minnesota fleeing statute did not constitute a "crime of violence" (a term used in U.S.S.G. § 4B1.1 that is "virtually identical" to "violent felony" in § 924(e)). Based on this understanding, Mr. Bartel would not be an armed career criminal and so would not be subject to the 15-year minimum sentence prescribed by § 924(e). The parties thus anticipated a 10-year maximum sentence. *See* 18 U.S.C. § 924(a)(2).

Before Mr. Bartel was sentenced, however, the Supreme Court decided *Sykes v. United States*, 131 S. Ct. 2267 (2011), which held that a conviction under an Indiana law concerning vehicle flight from a law enforcement officer constituted a "violent felony." Following the ruling, the government sent Mr. Bartel's attorney a letter stating that it believed that *Sykes* had "made clear that Mr. Bartel's four convictions for fleeing police in a vehicle are violent felonies for purposes of applying the ACCA." When the parties appeared before the district court for guidance on the application of *Sykes* to Mr. Bartel, the court indicated that *Sykes* made it "inescapable" that the court was "required to find this fleeing charge as a crime of violence." Although Mr. Bartel maintained his objection to the court's application of *Sykes* to the Minnesota fleeing statute and argued that the government breached the plea agreement, he did not move to withdraw his guilty plea and was sentenced to 15 years in prison, the minimum term under the ACCA. On appeal, Mr. Bartel challenges the district court's holdings that violations of the Minnesota fleeing statute are violent felonies under the ACCA and that the government did not violate the plea agreement.

The ACCA sets a mandatory minimum sentence for certain recidivist felons. Although the maximum sentence for being a felon in possession of a firearm is ordinarily 10 years' imprisonment, if, "when the unlawful possession occurred, the felon had three previous convictions for a violent felony ... , the punishment is increased to a minimum term of 15 years." *Sykes*, 131 S. Ct. at 2270; *see also* 18 U.S.C. § 924(a)(2), (e). As relevant, the statute defines "violent felony" as "any crime punishable by imprisonment for a term exceeding one year ... that ... has as an element the use, attempted use, or threatened use of physical force against the person of another; or ... involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

We use the so-called categorical approach to determine whether an offense is a violent felony: "we look only to the fact of conviction and the statutory definition of the prior offense, and do not generally consider the particular facts disclosed by the record of conviction." *Sykes*, 131 S. Ct. at 2272 (internal quotation marks and citations omitted); *see also United States v. Gordon*, 557 F.3d 623, 625 (8th Cir. 2009). The Minnesota statute under which Mr. Bartel was convicted states, "Whoever by means of a motor vehicle flees or attempts to flee a peace officer who is acting in the lawful discharge of an official duty, and the perpetrator knows or should reasonably know the same to be a peace officer, is guilty of a felony." Minn. Stat. § 609.487, subd. 3. In turn, to "flee" is defined as "to increase speed, extinguish motor vehicle headlights or taillights, refuse to stop the vehicle, or use other means with intent to attempt to elude a peace officer following a signal given by any peace officer to the driver of a motor vehicle." Minn. Stat. § 609.487, subd. 1.

In *Tyler*, 580 F.3d at 723-24, we held that a violation of the Minnesota fleeing statute did not constitute a "crime of violence" for purposes of the career offender designation under the Sentencing Guidelines. *See* U.S.S.G. §§ 4B1.1, 4B1.2(a). We noted in *Tyler* that "we employ the same test to decide whether an offense constitutes

a 'crime of violence' under the Sentencing Guidelines" or a "violent felony" under the ACCA "because the definitions of 'violent felony' and 'crime of violence' are virtually identical." *Tyler*, 580 F.3d at 724 n.3 (citing *United States v. Wilson*, 562 F.3d 965, 967-68 (8th Cir. 2009)). We identified that "test" as a question of "whether the offense (1) involves conduct that presents a serious potential risk of physical injury to another and (2) typically involves purposeful, violent, and aggressive conduct." *Tyler*, 580 F.3d at 724 (internal quotation marks and citation omitted). We reasoned that, although the actions prohibited by the Minnesota statute are "admittedly disobedient, they do not necessarily translate into a serious potential risk of physical injury." *Id.* at 725. We also recognized that violations of the statute typically do not involve "purposeful, violent, and aggressive conduct." *Id.* at 724. We noted that "the statute's definition of 'fleeing' criminalizes conduct that is neither violent nor aggressive, such as merely 'extinguish[ing] motor vehicle headlights or taillights'" and thus held that "the elements of the statute do not require a confrontation, chase, or any other conduct indicating that the crime in question necessarily involves conduct presenting a serious risk of physical injury to another or conduct that is violent and aggressive." *Id.* at 725 (quoting Minn. Stat. § 609.487, subd. 1).

In *Sykes*, however, the Supreme Court held that a violation of an Indiana statute that penalized a "person who," while using a vehicle, "knowingly or intentionally ... flees from a law enforcement officer after the officer has, by visible or audible means, identified himself and ordered the person to stop" constituted categorically a violent felony under the ACCA. *Sykes*, 131 S. Ct. at 2271 (quoting Ind. Code § 35–44–3–3 (repealed July 1, 2012)). Stating that when a "perpetrator defies a law enforcement command by fleeing in a car, the determination to elude capture makes a lack of concern for the safety of property and persons of pedestrians and other drivers an inherent part of the offense," the Court reasoned that "[r]isk of violence is inherent to vehicle flight," even if the criminal attempting to elude capture "drives without going at full speed or going the wrong way." *Id.* at 2273–74. The Court held, furthermore, that only crimes akin to "strict-liability, negligence, and recklessness crimes" required

the "purposeful, violent, and aggressive formulation." *Id.* at 2276. Crimes with a "*mens rea* requirement," conversely, do not need to be "purposeful, violent, and aggressive" to be violent felonies under the ACCA but need only to "involve[] conduct that presents a serious potential risk of physical injury to another." *Id.* at 2275–76. Although *Sykes* did not expressly overrule *Tyler*, the Court did mention that its treatment of the Indiana fleeing statute as a violent felony was "at least in tension, if not in conflict, with the reasoning" that we used in *Tyler*. *Id.* at 2272.

Given the Supreme Court's treatment of the Indiana fleeing statute, we hold that a violation of Minnesota Statute § 609.487, subd. 3 "presents a serious potential risk of physical injury to another" and is therefore a "violent felony" under the ACCA. We note that the categorical approach does not require that "every conceivable factual offense covered by a statute ... necessarily present a serious potential risk of injury before the offense can be deemed a violent felony." *James v. United States*, 550 U.S. 192, 208 (2007). Instead, "the proper inquiry is whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *Id.* Given that the "[r]isk of violence is inherent to vehicle flight," *see Sykes*, 131 S. Ct. at 2274, ordinary violations of the Minnesota statute do present a serious risk of injury to others. Although there may be ways that a person could, for instance, safely "extinguish motor vehicle headlights or taillights ... with intent to attempt to elude a peace officer," we cannot say that this practice, in the ordinary case, does not present a serious potential risk of injury to others. Indeed, as the Supreme Court noted, "[c]onfrontation with police is the expected result of vehicle flight." *Sykes*, 131 S. Ct. at 2274. And, as in *Sykes*, it is partly the *mens rea* requirement of the relevant statute -- the "intent to attempt to elude capture," Minn. Stat. 609.487 -- that "makes a lack of concern for the safety of property and persons of pedestrians and other drivers an inherent part of the offense," *Sykes,* 131 S. Ct. at 2273.

We also hold that the district court correctly decided that there was no breach of the plea agreement. To determine whether the plea agreement has been breached, we "interpret the agreement according to general contract principles." *United States v. Raifsnider*, 663 F.3d 1004, 1009 (8th Cir. 2011). Because he is asserting the breach, Mr. Bartel "has the burden of establishing it." *Id.* A relevant portion of the agreement states:

> Based on information available at this time, the parties believe that the defendant's criminal history category is VI. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. Defendant's actual criminal history and related status (which might impact the defendant's adjusted offense level) will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing.

The agreement, furthermore, gave the parties "the right to argue for a sentence outside the applicable Guidelines range." Nowhere in the agreement does the government promise to recommend a specific adjusted offense level. *Cf. United States v. Fowler*, 445 F.3d 1035, 1038 (8th Cir. 2006). The government therefore did not breach the plea agreement by arguing that, under *Sykes,* Mr. Bartel's violations of the Minnesota fleeing statute made him an armed career criminal, which increased his sentence above the range contemplated by the plea agreement.

Affirmed.

_____