In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1554

AUGUSTUS LIGHT,

*Petitioner-Appellant*,

*v.*

JOHN F. CARAWAY, Warden,

*Respondent-Appellee*.

Appeal from the United States District Court for the
Southern District of Indiana, Terre Haute Division.
No. 2:12-cv-00292-JMS-MJD — **Jane E. Magnus-Stinson**, *Judge*.

ARGUED MAY 20, 2014 — DECIDED AUGUST 4, 2014

Before KANNE, TINDER, and HAMILTON, *Circuit Judges*.

TINDER, *Circuit Judge*. In 2003, Petitioner-Appellant Augustus Light was convicted in Minnesota federal district court on one count of firearm possession by a felon. The presentence investigation report ("PSR") prepared by the probation office suggested that Light should be treated as an "armed career criminal" under the Armed Career Criminal Act, 18 U.S.C. § 924(e) ("ACCA"), and subject to the corresponding offense level and criminal history category boosts

provided by § 4B1.4 of the Sentencing Guidelines. These en-hancements apply when a defendant has "three previous convictions … for a violent felony or a serious drug of-fense."[1] The ACCA paragraph of the PSR stated that "in ad-dition to the defendant's two qualifying juvenile acts of vio-lence" he had "at least three prior convictions for a violent felony or serious drug offense." One of the prior adult con-victions identified in the PSR as a violent felony was a con-viction for criminal vehicular operation resulting in substan-tial bodily harm ("criminal vehicular operation"). The ACCA paragraph also identified two other adult convic-tions—third-degree burglary and a third-degree controlled substances crime. In the "Criminal History" section of the PSR, the probation officer enumerated all of Light's previous criminal history, and specified that, *inter alia*, Light also had a felony conviction for fleeing a peace officer in a motor ve-hicle.

---

[1] In relevant part, the portion of ACCA defining "violent felony" pro-vides:

> [T]he term "violent felony" means any crime punishable by im-prisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
>
> > **(i)** has as an element the use, attempted use, or threat-ened use of physical force against the person of another; or
> >
> > **(ii)** is burglary, arson, or extortion, involves use of ex-plosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another… .

18 U.S.C. § 924(e)(2)(B).

Following the recommendation in the PSR, the Minnesota district court concluded that Light's offense level was 33 with a criminal history category of VI, with a guideline imprisonment range of 235 to 293 months, rather than the range of 120 to 150 months that it would have been without the ACCA enhancement. In sentencing Light to 235 months' incarceration, the district court did not specify which three convictions supported the finding that Light was an armed career criminal. After an unsuccessful direct appeal of his conviction and sentence, Light challenged the ACCA enhancement in a 28 U.S.C. § 2255 petition, contending that the use of the drug offense as one of the three predicate offenses was improper. The district court denied this challenge and declined a certificate of appealability, holding that Light's "criminal history include[d] a sufficient number of other predicate offenses to support an armed career criminal status without any reliance upon the objected to offense." In 2008, the Supreme Court decided the case of *Begay v. United States*, 553 U.S. 137, 139, 143 (2008), concluding that driving under the influence of alcohol is not a "violent felony" as defined by the ACCA, because the term "violent felony" applies only to crimes within the so-called "residual clause" of the ACCA that are "roughly similar, in kind as well as degree of risk posed," to the specific felonies enumerated in the statute. Light then sought leave from the Eighth Circuit to file successive petitions under 28 U.S.C. § 2255, appealing the use of his criminal vehicular operation conviction as a predicate offense for the ACCA enhancement. The Eighth Circuit denied those requests.

He then filed a *pro se* habeas petition under 28 U.S.C. § 2241 in the Southern District of Indiana, where he is incarcerated. (The venue requirement in § 2241 is different from

the venue requirement in § 2255: while an action under the latter must be brought in the district of conviction, a petition under § 2241 must be brought in the district of incarceration.) In filing his petition, Light relied on the "savings clause," 28 U.S.C. § 2255(e), which provides that

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.

His petition contended that in light of *Begay*, he was entitled to a sentence reduction because one of his predicate ACCA convictions did not qualify as a "violent felony." The Indiana district court dismissed the habeas petition on the grounds that relief under § 2255 had been available to him and had not been "inadequate or ineffective to test the legality of his detention," and consequently Light did not qualify for the savings clause. The district court reasoned that "the remedy afforded by § 2255 was anything but 'unavailable' or ineffective to test the validity" of Light's conviction. Light timely appealed. We review the denial of his habeas petition *de novo*, and all of the district court's factual determinations for clear error. *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013).

**I**

We begin with the threshold question of whether Light qualifies for the savings clause. Ordinarily a federal prisoner seeking to attack his sentence or conviction collaterally must bring an action under § 2255, "the federal prisoner's substitute for habeas corpus," in the district of conviction. *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012). The "essential function" of § 2255 "is to give a prisoner a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence." *In re Davenport*, 147 F.3d 605, 609 (7th Cir. 1998). Only in rare circumstances where § 2255 is "inadequate or ineffective to test the legality of the prisoner's detention" may relief be granted under the federal habeas corpus statute, 28 U.S.C. § 2241, *Brown v. Rios*, 696 F.3d at 640 (quoting 28 U.S.C. § 2255(e)), and such an action must be brought in the district of incarceration, 28 U.S.C. § 2241(a). Section 2255 provides a means by which a prisoner may bring a second, successive § 2255 petition if he invokes "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," 28 U.S.C. § 2255(h)(2), but is silent on how a prisoner can challenge his sentence based on a new and retroactive *statutory* decision, *Davenport*, 147 F.3d at 610. For this reason, our circuit allows for a § 2241 challenge based on a new statutory interpretation by the Supreme Court, provided three conditions set forth in *Davenport* are satisfied:

> First, the prisoner must show that he relies on a "statutory-interpretation case," rather than a "constitutional case." Second, the prisoner must show that he relies on a retroactive decision that he could not have

invoked in his first § 2255 motion. "The third condition is that [the] sentence enhancement … have been a grave enough error to be deemed a miscarriage of justice corrigible therefore in a habeas corpus proceeding."

*Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013) (quoting *Brown v. Rios*, 696 F.3d at 640) (internal citations omitted).

The first *Davenport* condition is not under contention here; we have before noted that *Begay* was a statutory interpretation case, and that this condition is satisfied in challenges based on *Begay*'s interpretation of "violent felony" under the ACCA. *Brown v. Rios*, 696 F.3d at 640. Nor is the third *Davenport* condition in dispute: we have concluded that "fundamental sentencing defect[s]," such as "a misapplication of the [then-]mandatory career offender Guideline[,] present[] a cognizable non-constitutional claim for initial collateral relief because the error resulted in a miscarriage of justice." *Brown v. Caraway*, 719 F.3d at 587. We do not find, and the government does not raise, a limiting principle that would distinguish an erroneous application of a mandatory Guideline from an erroneous enhancement under the ACCA, and which would lead us to the conclusion that the erroneous application of the ACCA is not a cognizable claim for collateral relief.

We therefore review the second *Davenport* condition only. Light contends that the second *Davenport* condition is met because *Begay* was a retroactive decision that could not have been invoked in his first § 2255 motion. We have applied two different tests in this context. In *Brown v. Rios*, we simply concluded that the prisoner could not have invoked *Begay* because *Begay* hadn't been decided by the time of the peti-

tioner's first § 2255 motion. *Brown v. Rios*, 696 F.3d at 640. Under this standard, Light would meet the second *Davenport* prong because *Begay* was issued almost two years after Light's initial § 2255 motion. In other cases, however, we have "employed a slightly higher standard," requiring that the prisoner "show that his claim was 'foreclosed by binding precedent' at the time of his direct appeal and § 2255 motion." *Brown v. Caraway*, 719 F.3d at 595 (quoting *Hill v. Werlinger*, 695 F.3d 644, 648 (7th Cir. 2012)). We reasoned that "the fact that a position is novel does not allow a prisoner to bypass section 2255 … . Only if the position is foreclosed (as distinct from not being supported by—from being, in other words, novel) by precedent is a § 2255 remedy inadequate." *Hill*, 695 F.3d at 648 (quoting *Morales v. Bezy*, 499 F.3d 668, 672 (7th Cir. 2008)) (internal quotation marks omitted). To satisfy this standard, the prisoner must show that "if [he] had made the argument he currently advances . . . he clearly would have lost under" the precedent of the jurisdiction. *Brown v. Caraway*, 719 F.3d at 595.

Binding precedent at the time of Light's initial § 2255 motion barred his current claim that his criminal vehicular operation conviction is not a violent felony under the ACCA. In a case decided six months before Light's initial § 2255 motion, the Eighth Circuit held that a "crime of violence" under the ACCA was not "limited to violent crimes of active aggression," but that it included "conduct that presents a serious potential risk of physical injury to another," regardless of the offender's intent. *United States v. McCall*, 439 F.3d 967, 970–71 (8th Cir. 2006). Light's argument that criminal vehicular operation—arguably not a crime of active aggression, but one that involves serious risk of injury to another—was not a crime of violence under the ACCA was thus foreclosed

under the Eighth Circuit's jurisprudence at the time of his initial § 2255 motion. Consistent with this fact, the Eighth Circuit has stated in multiple cases subsequent to *Begay* that the Supreme Court's decision overruled the circuit's prior interpretations of what constitutes a violent crime for the ACCA. *See, e.g.*, *United States v. Heikes*, 525 F.3d 662, 664 (8th Cir. 2008) (stating that in *Begay*, "the Supreme Court overruled our interpretation of § 924(e)(1) and held driving under the influence of alcohol is not a violent felony as defined in the Armed Career Criminal Act"); *United States v. Comstock*, 531 F.3d 667, 679 (8th Cir. 2008) (quoting *Heikes*).We believe that these facts suffice to meet the heightened *Hill/Brown v. Caraway* standard that requires that the claim have been foreclosed by existing binding law, not merely unsupported by prior jurisprudence.

The government argues that because *McCall* concerned the specific offense of driving while intoxicated, not criminal vehicular operation, Light's challenge was not foreclosed by specific precedent. However, this argument ignores the fact that the holding of *McCall* is phrased in sufficiently broad language that encompasses both criminal vehicular operation and driving while intoxicated—both crimes that are not "violent crimes of active aggression" like the enumerated crimes in the ACCA, such as burglary, extortion, or arson. And interpreting a court's statements of this nature to encompass categories of logically-related offenses, rather than only the specific offense in question, is indubitably the more economical use of judicial resources.

Finding that Light satisfies all three *Davenport* factors and was eligible to file a petition for habeas relief under the savings clause of § 2255(e), we proceed to the merits.

**II**

The district court never adjudicated Light's § 2241 claim on the merits, but our consideration of the merits leads us to the same conclusion as the district court's: Light is not eligible for relief. Through intervening changes in the law, one of his prior predicate offenses for the ACCA enhancement no longer qualifies, but one that was not previously a qualifying predicate offense has become eligible. The net change is zero. Light is still eligible for the ACCA enhancement.

It is true that under current law, Light's criminal vehicular operation conviction is no longer a qualifying predicate offense for the ACCA enhancement. Criminal vehicular operation is not specifically described or named in the violent crimes definition of the statute, and the residual clause of the definition "encompasses only purposeful crimes; crimes with the *mens rea* of recklessness do not fall within its scope." *United States v. Woods*, 576 F.3d 400, 412–13 (7th Cir. 2009). "In *Begay* … the Court rejected a reading of the ACCA that would have allowed the drunk driver's intentional acts of drinking and driving, followed by recklessness with regard to the behavior that the statute made criminal (behavior that represented the consequences of the intentional act of drinking), to satisfy the statute." *Id.* at 409. As with the drunk driving statute in *Begay*, the Minnesota criminal vehicular operation statute in effect at the time of Light's conviction in 2001, Minn. Stat. § 609.21, did not require a *mens rea* of deliberateness; the Minnesota statute required a *mens rea* of recklessness: "gross[] negligen[ce]" or "negligen[ce] … while under the influence of" alcohol or another controlled substance. And because the criminal vehicular operation charge does not qualify as a predicate crime of violence un-

der the ACCA, it cannot be counted as one of the three required for the sentencing enhancement.

However, in the intervening period between Light's sentencing and our review, the Supreme Court has also clarified its understanding of the residual clause in a way which reflects on another one of Light's convictions. His Minnesota conviction for fleeing a peace officer in a vehicle was not considered a violent crime when he was sentenced, but now would be considered one. In *Sykes v. United States*, 131 S. Ct. 2267, 2270 (2011), the Supreme Court held that a conviction for felony flight from a law enforcement officer in a vehicle is a violent felony as the term is used by the ACCA. The Court observed that "[w]hen a perpetrator defies a law enforcement command by fleeing in a car, the determination to elude capture makes a lack of concern for the safety of property and persons of pedestrians and other drivers an inherent part of the offense." *Sykes*, 131 S. Ct. at 2273–74. This "indifference" to collateral consequences and "risk of violence" to police officers and bystanders places vehicular flight in the class of violent crimes encompassed by the residual clause of the ACCA. *Id.* The Eighth Circuit promptly adopted the Supreme Court's rationale in *United States v. Bartel*, 698 F.3d 658, 662 (8th Cir. 2012), *cert. denied*, 133 S. Ct. 1481 (2013), holding that a defendant's prior Minnesota vehicular flight convictions—convictions identical to Light's conviction for fleeing a peace officer in a motor vehicle—qualified as ACCA predicate offenses. *Bartel* remains good law in the Eighth Circuit. *See, e.g.*, *United States v. Pate*, No. 13-1207, --- F.3d ---, 2014 WL 2535302, at *1 (8th Cir. Jun. 6, 2014).

Light argues that we should read *Sykes* to not apply to the Minnesota statute under which he was convicted, in di-

rect contradiction of the Eighth Circuit's jurisprudence on this question. In the alternative, Light argues that we should selectively take note of the change in law: he argues that while the change in *Begay* should apply retroactively in his favor, due process concerns should stop us from applying *Sykes* and *Bartel* retroactively against him. We consider these arguments in turn.

## A

Light argues that the Minnesota statute under which he was convicted is distinguishable from the Indiana statute in *Sykes*. In dicta, *Sykes* noted that the structure of the vehicular flight statute that was then in effect, Ind. Code § 35-44-3-3,[2] reflected the intent to treat all vehicle flight, whether aggravated or not, "as crimes of the same magnitude." *Sykes*, 131 S. Ct. at 2276. The Court based this observation on the fact that both vehicle flight generally, and vehicle flight in which the offender "operates a vehicle in a manner that creates a substantial risk of bodily injury to another person," were categorized as class D felonies by the Indiana statute. *Id.* Light points out that unlike the Indiana statute in *Sykes*, Minnesota's statute in effect at the time of Light's vehicular flight conviction penalized flight in a motor vehicle differently from flight that resulted in death or bodily injury. Subdivision 3, the general vehicular flight clause, provided that the perpetrator "may be sentenced to imprisonment for not more than three years and one day or to payment of a fine of not more than $5,000, or both." Minn. Stat. § 609.487 subd. 3 (1999). By contrast, Subdivision 4, applying to aggravated

---

[2] Indiana's law on resisting law enforcement by fleeing in a vehicle has been amended and recodified as Ind. Code 35-44.1-3-1.

vehicular flight, provided three different levels of penalty: "[i]f the course of fleeing results in death," "[i]f the course of fleeing results in great bodily harm," and "[i]f the course of fleeing results in substantial bodily harm." Minn. Stat. § 609.487 subd. 4(a)–(c). Light argues that this distinction between the statutes is material: that because he was convicted under the simple vehicular flight provision rather than the aggravated one, his variety of vehicular flight was not a crime of violence, at least not one that can be classified as a violent felony under *Sykes*.

Light's argument is faulty for several reasons. First, his argument ignores the fact that the Court heavily leaned on the *risks created* by felony vehicular flight, as opposed to the outcome thereof, to determine that vehicle flight was a violent crime.

> Risk of violence is inherent to vehicle flight. Between the confrontations that initiate and terminate the incident, the intervening pursuit creates high risks of crashes. It presents more certain risk as a categorical matter than burglary. It is well known that when offenders use motor vehicles as their means of escape they create serious potential risks of physical injury to others. Flight from a law enforcement officer invites, even demands, pursuit. As that pursuit continues, the risk of an accident accumulates. And having chosen to flee, and thereby commit a crime, the perpetrator has all the more reason to seek to avoid capture.

*Sykes*, 131 S. Ct. at 2274.

Just because the outcome of a particular defendant's flight is not death or bodily injury to others does not mean that the

defendant did not risk grave injury to others in attempting flight in a vehicle. It is easy to imagine an extraordinarily risky—yet quite lucky—perpetrator who flees from a police officer by driving the wrong way on a bustling highway with reckless disregard for the lives of his fellow drivers, yet manages to avoid killing or seriously injuring anyone he encounters. Such a perpetrator would be punishable under Subdivision 3 of the Minnesota statute, yet it is difficult to see how the perpetrator would avoid the clear logic of *Sykes.*

Moreover, the Eighth Circuit has already considered this specific question and concluded that a conviction under Subdivision 3 of the Minnesota vehicular flight statute constitutes a violent crime, one that qualifies as a predicate offense for the ACCA enhancement. Shortly after *Sykes* was decided, the Eighth Circuit followed the Court's reasoning in *Bartel*, "hold[ing] that a violation of Minnesota Statute § 609.487, subd. 3 presents a serious potential risk of physical injury to another and is therefore a violent felony under the ACCA." *Bartel*, 698 F.3d at 662 (internal quotation marks omitted). The Eighth Circuit recently "reaffirm[ed]" that *Bartel* is good law, rejecting a defendant's assertion that Minnesota's generalized vehicle flight provision was not a violent felony under the ACCA. *Pate*, 2014 WL 2535302, at *4. We decline to contradict the Eighth Circuit's sound interpretation of this statute and thereby create an unnecessary circuit split.

**B**

In the alternative, Light argues that we should not consider his vehicle flight conviction a predicate offense for the ACCA enhancement for due process reasons. He argues that neither the PSR nor the Minnesota district court ever identified his vehicle flight conviction as a predicate offense for the purposes of the ACCA. It is true that "due process prohibits retroactive application of any judicial construction of a criminal statute [that] is unexpected and indefensible by reference to the law which has been expressed prior to the conduct in issue." *Rogers v. Tennessee*, 532 U.S. 451, 455 (2001) (internal quotation marks and citations omitted). However, Light presents no evidence in support of his argument that the Court's interpretation that felony vehicular flight is a violent crime was an unexpected and indefensible change, "a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266 (1997). In essence, he argues that the decision in *Sykes* post-dated his sentencing, and that he could not have necessarily foreseen this change in the law at the time of his sentencing hearing. Be that as it may, *Sykes* did not constitute an "unexpected and indefensible" change; it was a resolution of an uncertain question of law, an opportunity for the Court to "clarify … prior opinions as new circumstances and fact patterns present themselves." *Rogers*, 532 U.S. at 461. In recent years, the Court has spoken frequently on the scope of the ACCA's residual clause. *See, e.g.*, *Descamps v. United States*, 133 S. Ct. 2276 (2013) (a generic burglary conviction is not a violent felony within the meaning of the ACCA); *Sykes*, 131 S. Ct. at 2267; *Johnson v. United States*, 559 U.S. 133 (2010) (a battery conviction is not a violent felony within the scope

of the residual clause); *Chambers v. United States*, 555 U.S. 122 (2009) (failing to report is not a violent felony under the ACCA); *James v. United States*, 550 U.S. 192 (2007) (attempted burglary is a violent felony within meaning of the residual clause). In light of the numerous recent cases elaborating on the scope of the ACCA's residual clause, we do not find persuasive Light's argument that there was an element of undue surprise about the Supreme Court's consideration of whether felony flight is a violent crime.

This anti-retroactivity argument is even less persuasive in the context of this case, as Light is simultaneously attempting to benefit from a retroactive change in the law. We cannot see why Light is entitled to a one-way ratchet, subject only to changes in law that benefit him but immune from changes in law that are not helpful.

### III

For the foregoing reasons, we AFFIRM the decision below.