In the

# United States Court of Appeals
## for the Seventh Circuit

———————————

No. 19-1758

NINO ALONZO FRANKLIN,

*Petitioner-Appellant,*

*v.*

RANDY KEYES, Warden,

*Respondent-Appellee.*

———————————

Appeal from the United States District Court
for the Central District of Illinois.
No. 17-cv-1266 — **James E. Shadid**, *Judge.*

———————————

ARGUED MAY 21, 2021 — DECIDED APRIL 4, 2022

———————————

Before SYKES, *Chief Judge*, and RIPPLE and HAMILTON, *Circuit Judges.*

SYKES, *Chief Judge*. This appeal raises yet another procedurally complex question about a federal prisoner's access to habeas review under 28 U.S.C. § 2241 via the "saving clause" in 28 U.S.C. § 2255(e) as interpreted in *In re Davenport*, 147 F.3d 605 (7th Cir. 1998). We have addressed a cluster of similar cases in the wake of the Supreme Court's decision in *Mathis v. United States*, 136 S. Ct. 2243 (2016), which clarified

how courts should classify prior convictions for purposes of the enhanced penalties in the Armed Career Criminal Act ("ACCA" or "the Act"), 18 U.S.C. § 924(e). Two of our *Mathis*-based saving-clause cases are especially important here: *Chazen v. Marske*, 938 F.3d 851 (7th Cir. 2019), and *Guenther v. Marske*, 997 F.3d 735 (7th Cir. 2021).

Nino Franklin was convicted and sentenced in 2014 in the District of Minnesota for a federal firearms offense. The court imposed an enhanced sentence under the ACCA based on six of Franklin's prior convictions, including three for Minnesota burglary and two for Illinois residential burglary. Franklin neither appealed nor pursued § 2255 collateral relief in the sentencing court within a year of the date on which the judgment became final. 28 U.S.C. § 2255(f)(1).

Soon after *Mathis*, however, he filed a petition for habeas corpus under § 2241 in the Central District of Illinois, where he was confined. Relying on *Mathis*, he argued that he was wrongly sentenced as an armed career criminal. He was on solid ground about the Minnesota burglary convictions: as *Mathis* clarified, they should not have been counted as ACCA predicates. *See Guenther*, 997 F.3d at 741–42; *Chazen*, 938 F.3d at 859–60. But three qualifying convictions remained—enough to support his enhanced sentence—so the district judge denied relief. After Franklin appealed, we held in *United States v. Glispie* that an Illinois conviction for residential burglary does not qualify as an ACCA predicate. 978 F.3d 502, 503 (7th Cir. 2020) (per curiam). That knocked out two of the remaining predicates, leaving Franklin with only one.

The government now concedes that Franklin's sentence is unlawful. But it opposes § 2241 relief, arguing that he has

not satisfied *Davenport*'s requirements to pass through the saving-clause gateway because his claim relies not on *Mathis* but on *Glispie*. The government maintains that Franklin could have challenged the use of his two Illinois burglary convictions as ACCA predicates on direct appeal or in a timely § 2255 motion in the sentencing court.

We disagree and reverse the judgment. Though our decision in *Glispie* is important to Franklin's ultimate entitlement to relief on the merits, his claim rests fundamentally on *Mathis*, which corrected the Eighth Circuit's misunderstanding of the method for classifying convictions under the ACCA and other recidivist provisions. Before the Supreme Court's corrective action, any challenge to the use of his Minnesota *or* his Illinois burglaries as ACCA predicates was foreclosed in that circuit.

The only lingering question after *Chazen*, *Guenther*, and *Glispie* is whether Franklin's claim falls within the *Davenport* line of cases in the first place. *Davenport* dealt with a prisoner who was blocked from using § 2255 because of § 2255(h)'s bar on successive motions, which made the remedy by motion "inadequate or ineffective" within the meaning of the saving clause. 147 F.3d at 610–11. Here, the limitations period in § 2255(f)—not § 2255(h)'s bar on successive motions—blocked a *Mathis*-based motion in the sentencing court. But the critical point under *Davenport* is that § 2255 never gave Franklin an opportunity to challenge his status as an armed career criminal. At all times within Franklin's one-year window under § 2255(f), a challenge to his sentence was destined to fail given Eighth Circuit precedent. *Mathis* clarified that his sentence is unlawful, but § 2255 never

permitted him to make that claim, through no fault of his own.

Accordingly, Franklin has satisfied the *Davenport* criteria to access § 2241 habeas review through the § 2255(e) saving clause. We remand with instructions to grant appropriate habeas relief.

## I. Background

### A. Franklin's Case in the District Court in Minnesota

In October 2013 Franklin pleaded guilty in the District of Minnesota to unlawfully possessing a firearm as a felon, 18 U.S.C. § 922(g)(1). The offense normally carries a 10-year maximum and no minimum sentence, *id.* § 924(a)(2), but Franklin agreed that he qualified as an armed career criminal under the ACCA, which requires a 15-year minimum sentence and lifts the 10-year maximum to life in prison if the offender has three or more prior convictions for a "violent felony" or a "serious drug offense," § 924(e). Only the "violent felony" definition is at issue here.

The Act defines "violent felony" as any crime punishable by a prison term "exceeding one year" that (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another," § 924(e)(2)(B)(i) (the "elements clause"); *or* (2) "is burglary, arson, or extortion," § 924(e)(2)(B)(ii) (the "enumerated-offenses clause"); *or* (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another," *id.* (the "residual clause").

Franklin's presentence report ("PSR") identified six potentially qualifying convictions in his criminal record:

- Two 1995 Illinois convictions for separate residential burglaries, 720 ILL. COMP. STAT. 5/19-3 (1995) (amended 2001), committed in 1993 and 1994;

- One 1995 Illinois conviction for aggravated kidnapping/armed robbery, *id.* §§ 5/10-2, 5/18-2;

- One 2006 Minnesota conviction for second-degree burglary, MINN. STAT. § 609.582(2);

- One 2006 Minnesota conviction for third-degree burglary, *id.* § 609.582(3); and

- One 2012 Minnesota conviction for second-degree burglary, § 609.582(2).

Franklin's case proceeded to sentencing in May 2014. Consistent with the recommendations in the PSR, the judge found that Franklin qualified for the ACCA's enhanced penalties and imposed a 200-month sentence. Franklin did not appeal. Nor did he seek collateral relief in the sentencing court under § 2255 within the statutory limitations period—that is, within a year of the date on which the judgment became final. § 2255(f)(1). A § 2255 motion is the default—and usually the exclusive—vehicle for federal prisoners to seek collateral relief.

**B. New Legal Developments**

The developments that knocked out Franklin's Minnesota and Illinois burglary convictions as ACCA predicates began two years after he was sentenced but proceeded on slightly different tracks. It started with the doctrinal shift for Minnesota burglary in response to *Mathis*, which we discussed in depth in *Chazen*, 938 F.3d at 857–60. *Guenther*

provides a shortened version of this history, 997 F.3d at 739–41, and here we can be even more abbreviated.

The crimes of second- and third-degree burglary in Minnesota are enumerated in "a single statute and start from the same basic definition" but vary based on "different sets of aggravating circumstances." *Id.* at 739. The statute defines second-degree burglary to cover anyone who "enters a building without consent and with intent to commit a crime, or enters a building without consent and commits a crime while in the building, either directly or as an accomplice," provided that he either uses burglary tools or the entry occurs at one of several enumerated locales. MINN. STAT. § 609.582(2). Third-degree burglary is defined almost identically but without the aggravating circumstances, covering anyone who "enters a building without consent and with intent to steal or commit any felony or gross misdemeanor while in the building, or enters a building without consent and steals or commits a felony or gross misdemeanor while in the building." *Id.* § 609.582(3).

Whether a prior conviction counts as an ACCA predicate hinges on the application of what the Supreme Court has called the "categorical approach," which originated in its decision in *Taylor v. United States*, 495 U.S. 575, 602 (1990). The categorical approach requires an analysis of the statutory definition of the crime of conviction rather than the particular facts of the underlying case. *Id.* at 600–01. As applied to the enumerated-offenses clause of the violent-felony definition, the categorical approach compares the statutory definition of the crime to the "generic" version of the offense enumerated in the ACCA. *Id.* at 598. As *Taylor* held, generic burglary for ACCA purposes consists of the

following elements: "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Id.*

Accordingly, under the categorical approach, Franklin's three Minnesota burglary convictions qualify as violent-felony ACCA predicates only if the statutory elements of the second- and third-degree crimes categorically match (or are narrower than) those of generic burglary. When he was sentenced in May 2014, "Eighth Circuit precedent supported a categorical match." *Guenther*, 997 F.3d at 739 (citing *United States v. LeGrand*, 468 F.3d 1077, 1081 (8th Cir. 2006)).

Two years later, however, the Supreme Court's decision in *Mathis* laid the groundwork for a change in course.[1] *Mathis* provided crucial guidance on how to classify convictions for ACCA purposes when the statute under which the defendant was convicted is alternatively phrased. Briefly, if a single, alternatively phrased criminal statute lists alternative elements, "then the statute defines multiple separate crimes and is said to be 'divisible.'" *Id.* A divisible statute justifies application of the "modified categorical approach," which permits the sentencing court to examine "a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Mathis*, 136 S. Ct. at 2249 (citing *Shepard v. United States*, 544 U.S. 13, 26 (2005)).

---

[1] In the interim, the Supreme Court held that the ACCA's residual clause, 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague. *Johnson v. United States*, 576 U.S. 591, 597 (2015). *Johnson* removes the possibility that Franklin's prior convictions could alternatively be classified as violent felonies under that clause.

As *Mathis* clarified, however, the modified categorical approach does *not* apply—and judges may *not* consult these sources (the so-called *Shepard* documents)—when an alternatively phrased statute has an "indivisible" structure, i.e., where "the statutory alternatives are simply different factual means of committing the crime." *Guenther*, 997 F.3d at 739. If the alternatives in an indivisible state statute sweep more broadly than the generic offense, then a conviction under that statute does not qualify as an ACCA predicate "even if [the defendant's] conduct fits within the generic offense." *Mathis*, 136 S. Ct. at 2251.

*Mathis*'s elements–means guidance "narrowed the range of state statutes that qualify as violent felony predicates under the [ACCA]." *Chazen*, 938 F.3d at 855. This narrowing effect had special force in the Eighth Circuit, where *Mathis* arose (that case concerned Iowa's burglary statute). 136 S. Ct. at 2250. Before *Mathis* the Eighth Circuit applied the modified categorical approach to *all* cases involving convictions under overbroad, alternatively phrased statutes without regard to the elements–means distinction that is so central to the concept of divisibility. *Chazen*, 938 F.3d at 857–58. That circuit and two others (the Sixth and the Tenth) were misreading the Court's decision in *Descamps v. United States*, 570 U.S. 254 (2013), which had also endeavored to clarify the modified categorical approach. *Chazen*, 938 F.3d at 858–59 (explaining the division among the circuits about the proper application of the modified categorical approach after *Descamps* and before *Mathis*). Laboring under this doctrinal error, when confronted with a categorically overbroad statute, courts in the Eighth Circuit looked to the *Shepard* documents too freely, which had the effect of counting convictions as ACCA predicates when they did not qualify.

*Mathis* corrected the Eighth Circuit's entrenched misunderstanding of divisibility and the modified categorical approach. 136 S. Ct. at 2250–51.

After *Mathis* the Eighth Circuit reversed course and recognized that the Minnesota crimes of second- and third-degree burglary sweep more broadly than generic burglary, and further, that the alternatives listed in each statute are different factual means of committing the crime rather than different elements of separate crimes. *United States v. Crumble*, 878 F.3d 656, 661 (8th Cir. 2018) (second-degree burglary); *United States v. McArthur*, 850 F.3d 925, 940 (8th Cir. 2017) (third-degree burglary). The court thus concluded that Minnesota burglary is a categorical mismatch with *Taylor*'s generic burglary because the offense does not "require that the defendant have formed the intent to commit a crime at the time of the nonconsensual entry or remaining in" the burglarized structure. *Crumble*, 878 F.3d at 661 (quotation marks omitted). And because the second- and third-degree statutes are indivisible, the court recognized that the modified categorical approach—i.e., checking the *Shepard* documents to see if the defendant actually committed generic burglary—does not apply. *Id.* at 660–61; *McArthur*, 850 F.3d at 940. Our circuit followed suit in *Van Cannon v. United States*, 890 F.3d 656, 664–65 (7th Cir. 2018).[2]

---

[2] As we explained in *Guenther*, the Eighth Circuit's revised understanding of Minnesota burglary may be somewhat in flux after *Quarles v. United States*, 139 S. Ct. 1872 (2019). *Guenther v. Marske*, 997 F.3d 735, 741 (7th Cir. 2021) (citing *Raymond v. United States*, 933 F.3d 988, 992 (8th Cir. 2019)). But *Quarles* left our conclusion in *Van Cannon* intact. *Id.* Because the government concedes that Franklin's sentence is unlawful, we do not need to address the effect of this uncertainty in the Eighth Circuit.

In February 2017—about eight months after *Mathis* and just weeks before the Eighth Circuit decided *McArthur*—Franklin returned to the Minnesota sentencing court with a pro se motion for § 2255 relief. Relying on *Mathis*, he sought resentencing, arguing that his ACCA-enhanced sentence is unlawful. His motion came almost three years after the judgment in his case became final, well outside the one-year window provided by § 2255(f)(1). The government predictably responded that the motion was untimely. It further argued that *Mathis* did not trigger § 2255(f)(3), which restarts the clock if the prisoner's motion invokes a newly recognized right and is filed within one year of "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Franklin accepted the government's point about untimeliness and moved to dismiss his § 2255 motion, acknowledging that relief based on *Mathis* could come only through § 2241. The Minnesota district judge accordingly dismissed Franklin's § 2255 motion without prejudice.

Three days later Franklin filed a pro se petition for habeas corpus under § 2241 in the Central District of Illinois, the district where he was then confined.[3] *See Webster v. Daniels*, 784 F.3d 1123, 1144 (7th Cir. 2015) (en banc) (explaining that § 2241 petitions must be filed in the district of confinement). The proceedings were stayed pending the Supreme Court's

---

[3] While this appeal has been pending, Franklin was transferred to the federal prison in Oxford, Wisconsin. The change in Franklin's custodian does not affect our jurisdiction. *See Harris v. Warden*, 425 F.3d 386, 388 (7th Cir. 2005). We have substituted the warden at Oxford as the respondent.

decision in *United States v. Stitt*, 139 S. Ct. 399 (2018), and the judge in the meantime appointed the Federal Defender to represent him.

*Stitt* did not affect Franklin's case after all, so the proceedings resumed and the judge eventually denied relief, holding that even without the Minnesota convictions, three qualifying ACCA predicates remained: two Illinois convictions for residential burglary and one for kidnapping. Our precedent was clear at that time that the Illinois crime of residential burglary qualified as an ACCA violent felony; Eighth Circuit precedent was the same. *See Dawkins v. United States*, 809 F.3d 953, 956 (7th Cir. 2016) (per curiam); *United States v. Maxwell*, 363 F.3d 815, 821 (8th Cir. 2004). Alternatively, the judge held that Franklin could not use § 2241 because he did not satisfy the strict requirements of § 2255(e)'s saving clause.

Franklin appealed, and the ground shifted again, knocking out the Illinois burglary convictions as ACCA predicates. At the time of Franklin's offenses, the statute under which he was convicted stated: "a person commits residential burglary [when he] knowingly and without authority enters the dwelling place of another with the intent to commit therein a felony or theft." 720 ILL. COMP. STAT. 5/19-3(a) (1995). As we've noted, when Franklin was sentenced in federal court in 2014, Eighth Circuit precedent clearly held that this crime categorically matched generic burglary. *Maxwell*, 363 F.3d at 821.

After he filed this appeal, however, a question arose in our circuit about the meaning of "without authority" in the Illinois residential-burglary statute. More specifically, in *United States v. Glispie*, the defendant argued that under

Illinois's limited-authority doctrine, a person can commit the offense of residential burglary by exceeding the scope of an otherwise lawful entry. 943 F.3d 358, 364–65 (7th Cir. 2019).

The limited-authority doctrine can be traced back to *People v. Weaver*, 243 N.E.2d 245 (Ill. 1968). There the defendant was convicted of burglary after he entered a public laundromat with the intent to steal from vending machines. The Illinois Supreme Court affirmed the conviction, describing the doctrine this way:

> A criminal intent formulated after a lawful entry will not satisfy the statute. But authority to enter a business building, or other building open to the public, extends only to those who enter with a purpose consistent with the reason the building is open. An entry with intent to commit a theft cannot be said to be within the authority granted patrons of a laundromat.

*Id.* at 248 (citation omitted). "*Weaver* thus established that one who enters a public building with the intent to commit a crime automatically satisfies the unlawful entry requirement of the Illinois burglary statute." *Glispie*, 943 F.3d at 365.

When *Glispie* was first before this court, state law was uncertain about whether the limited-authority doctrine extended to the residential-burglary statute. 943 F.3d at 367–68. If it did, then a defendant's intent to commit a felony or theft necessarily meant that his entry was without authority, making an unlawful entry unnecessary. *See id.* at 369. That, in turn, would make Illinois residential burglary broader than *Taylor*'s generic burglary. Because of the ambiguity about the doctrine's reach, we certified to the Illinois

Supreme Court the question whether the limited-authority doctrine applies to residential burglary. *Id.*

The court answered our certified question in the affirmative, making clear that the limited-authority doctrine applies to residential burglary. *United States v. Glispie*, 181 N.E.3d 719, 725 (Ill. 2020). Accordingly, we held that because the Illinois residential-burglary statute is categorically broader than generic burglary, a conviction for violating it cannot be used to enhance a sentence under the ACCA. *Glispie*, 978 F.3d at 503.

With that, Franklin's two Illinois burglary convictions dropped out of his ACCA total, leaving him with only one violent-felony predicate, not enough to support his ACCA-enhanced sentence.

## II. Discussion

As the foregoing discussion shows—and the government now concedes—Franklin's ACCA-enhanced sentence is unlawful. That narrows the scope of this appeal to a procedural question: is he eligible for § 2241 relief via § 2255(e) as interpreted in *Davenport*?

Section 2255 ordinarily "provides the exclusive means for a federal prisoner to collaterally attack his conviction or sentence." *Beason v. Marske*, 926 F.3d 932, 935 (7th Cir. 2019). As relevant here, since the enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), collateral review under § 2255 is subject to two key procedural rules. Section 2255(f)(1) sets a one-year statute of limitations that runs "from the latest of" one of four qualifying events, including "the date on which the judgment of conviction becomes final." And a prisoner is limited to just one motion,

with a "second or successive motion" permitted only if a court certifies that the motion contains either "newly discovered evidence" or a "new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h). If a motion is blocked by the limits imposed by either subsection (f) or subsection (h), collateral relief in the sentencing court is unavailable.

But the saving clause in § 2255(e) preserves a pathway for traditional habeas review under § 2241 "in a narrow set of circumstances." *Guenther*, 997 F.3d at 737. The opening is quite limited: the statute says that a prisoner's § 2241 petition "shall not be entertained" unless § 2255 "is inadequate or ineffective to test the legality of his detention." § 2255(e). In *Davenport* we addressed the meaning of the phrase "inadequate or ineffective," focusing on "the essential function of habeas corpus" and "whether it is impaired … by the limitations on the use of the remedy provided in [§] 2255." 147 F.3d at 609. We held that a federal prisoner's access to § 2241 through the saving-clause gateway depends on whether—given the limits on the § 2255 remedy—he had "a reasonable opportunity to obtain a reliable judicial determination of the fundamental legality of his conviction and sentence." *Id.* The inquiry is largely procedural. To access § 2241, a prisoner must establish that "a structural problem in § 2255 … foreclose[d] even one round of effective collateral review, unrelated to [his] own mistakes." *Poe v. LaRiva*, 834 F.3d 770, 772 (7th Cir. 2016) (quotation marks omitted).

*Davenport* involved consolidated appeals brought by two § 2241 petitioners, but only one was permitted to proceed. Sherman Nichols was convicted of using a firearm in the

commission of a drug offense in violation of 18 U.S.C. § 924(c). After an unsuccessful appeal and a failed § 2255 motion for collateral relief, the Supreme Court interpreted the term "use" in § 924(c) to require "more than a showing of mere possession." *Bailey v. United States*, 516 U.S. 137, 144 (1995), *superseded by statute*, Act of Nov. 13, 1998, Pub. L. No. 105-386, 112 Stat. 3469, *as recognized in United States v. O'Brien*, 560 U.S. 218, 232–33 (2010). *Bailey* upended circuit precedent to the contrary, meaning that Nichols was convicted and sentenced for conduct that the law does not make criminal. *Davenport*, 147 F.3d at 610. But he could not seek relief under § 2255 based on *Bailey* because § 2255(h)(2) permits second or successive motions only for new rules of *constitutional* law; *Bailey* was a statutory-interpretation decision. *Id.*

In those circumstances we held that § 2255 was inadequate or ineffective within the meaning of the saving clause. *Id.* We explained that "[a] procedure for postconviction relief can fairly be termed inadequate when it is so configured as to deny a convicted defendant *any* opportunity for judicial rectification" of a fundamental defect in his conviction or sentence, such as "having been imprisoned for a nonexistent offense." *Id.* at 611. Nichols's case fit the bill. *Bailey* postdated his § 2255 motion, so he "could not use a first motion under [§ 2255] to obtain relief on a basis not yet established by law." *Id.* at 610. And "[h]e could not use a second or other successive motion" because *Bailey*, as a statutory decision, did not bring his claim within the exceptions to successive motions specified in § 2255(h)(2). *Id.*

Finally, it would have been futile in his first § 2255 motion for Nichols to press the interpretation that *Bailey* en-

dorsed because the law in our circuit (where he was convict-
ed) was "firmly against him." *Id.* Doing so, we explained,
"would just clog the judicial pipes"; it would "require
defendants, on pain of forfeiting all right to benefit from
future changes in the law, to include challenges to settled
law in their briefs on appeal and in postconviction filings."
*Id.*

For these reasons, we concluded in *Davenport* that "[a]
federal prisoner should be permitted to seek habeas corpus
only if he had no reasonable opportunity to obtain earlier
judicial correction of a fundamental defect in his conviction
or sentence because the law changed after his first [§] 2255
motion." *Id.* at 611.

We recently synthesized *Davenport*'s requirements as fol-
lows:

> To pursue relief under § 2241, a petitioner must
> establish that "(1) the claim relies on a statuto-
> ry interpretation case, not a constitutional case,
> and thus could not have been invoked by a
> successive § 2255 motion; (2) the petitioner
> could not have invoked the decision in his first
> § 2255 motion and the decision applies retroac-
> tively; and (3) the error is grave enough to be
> deemed a miscarriage of justice."

*Chazen*, 938 F.3d at 856 (quoting *Beason*, 926 F.3d at 935).

As we've also recently noted, the *Davenport* test "has its
complexities and raises some difficult questions that to date
remain unanswered"—notably, questions regarding the
precise requirements for the first two conditions, including
whether the triggering change in the law must come from

the Supreme Court or can be a circuit-level decision. *Guenther*, 997 F.3d at 741 & n.3; *see also Chazen*, 938 F.3d at 863–66 (Barrett, J., concurring). This case does not require us to answer these thorny questions. Assuming Franklin's case falls within our *Davenport* doctrine at all (more on that later), *Chazen* and *Guenther* make clear that he satisfies all three of its requirements.

Starting with the first, Franklin's § 2241 petition "relies at least in part on *Mathis*, a statutory-interpretation case that 'is "new" as a functional and practical matter' because it 'injected much-needed clarity and direction into the law' regarding the application of the categorical approach." *Guenther*, 997 F.3d at 742 (quoting *Chazen*, 938 F.3d at 862). *Mathis* led to *McArthur* and *Crumble*, which in turn led to *Van Cannon*. *See id.* As things now stand, it's clear that the Minnesota crimes of second- and third-degree burglary cannot serve as ACCA predicates because the statutes are indivisible and categorically broader than generic burglary. *Id.*

It's true that Franklin's entitlement to relief on the merits for the *Mathis* error requires the addition of *Glispie*, which precluded the use of Illinois residential-burglary convictions as ACCA predicates on a routine application of *Taylor*. But Franklin need not show that *Mathis* is sufficient *by itself* to render his sentence unlawful. *Van Cannon*, 890 F.3d at 661–62. The *Mathis* error is undisputed, and the error is prejudicial in Franklin's case because *Glispie* eliminates two of the three remaining ACCA predicates needed to support his

enhanced sentence. In that sense, his case falls comfortably within our reasoning and holding in *Van Cannon*.[4]

Because Franklin's petition is based on *Mathis*, he likewise satisfies the second *Davenport* requirement in the same manner as in *Chazen* and *Guenther*. Any attempt at collateral review would have been futile until after *Mathis* because Eighth Circuit precedent was squarely against him, foreclosing relief. *Guenther*, 997 F.3d at 742. And here, as in *Guenther* and *Chazen*, the government "does not dispute that *Mathis* applies retroactively to cases on collateral review." *Id.*; *accord Chazen*, 938 F.3d at 862 ("It is only after *Mathis*—a case decided after Chazen's § 2255 petition that the government concedes is retroactive—that courts, including our court and the Eighth Circuit, have concluded that Minnesota burglary is indivisible because it lists alternative means of committing a single crime.").

Finally, Franklin has established that the error is grave enough to be deemed a miscarriage of justice. The government concedes this point too, so we can be brief. A "'fundamental sentencing defect'—including an erroneous ACCA-enhanced sentence—amounts to a 'miscarriage of justice.'" *Guenther*, 997 F.3d at 742 (quoting *Light v. Caraway*, 761 F.3d 809, 813 (7th Cir. 2014)); *see also Chazen*, 938 F.3d at 856. In light of the government's concession, there's no need to decide whether the merits of Franklin's habeas claim are governed by the law of the Eighth Circuit (the circuit of

---

[4] The government says that *Van Cannon* is distinguishable because it concerned a § 2255 motion, not a habeas petition under § 2241. That distinction is irrelevant. The way a court counts ACCA predicates does not vary based on the vehicle that a petitioner uses for his collateral attack.

conviction) or this court (the circuit of confinement). *See Guenther*, 997 F.3d at 742 (explaining the "choice-of-law conundrum").

With all three requirements satisfied, we return to the question whether Franklin's petition falls within *Davenport* in the first place. To date our *Davenport* cases have involved prisoners for whom § 2255(h) and its limits on successive motions created the operative structural problem that impeded collateral review—more specifically, the absence of an exception in § 2255(h) for new statutory cases (like *Bailey* and *Mathis*, for example). Recall, however, that Franklin filed his first § 2255 motion *after* the Supreme Court decided *Mathis*. The bar on successive motions thus did not stand in the way of a *Mathis*-based claim. The obstacle for him was § 2255(f)'s time bar and the inability to use *Mathis* to restart the one-year clock under § 2255(f)(3).[5]

We have not yet considered whether *Davenport* applies where § 2255(f)'s time bar blocks a new statutory claim. The government urges us to distinguish *Chazen* and *Guenther* on that basis and reject Franklin's § 2241 claim. We see things differently. In Franklin's circumstances, the effect of § 2255(f)'s time bar makes § 2255 "inadequate or ineffective" in essentially the same manner as in *Davenport*, so our reasoning there applies to the procedural question here. At its core, the saving clause as construed in *Davenport* permits

---

[5] *See Hanson v. United States*, 941 F.3d 874, 877 (7th Cir. 2019) (explaining that the petitioner "failed to show that the Supreme Court in *Mathis* intended to create a new rule upon which the statute of limitations may run"); *cf. United States v. Crandall*, 25 F.4th 582, 586 (8th Cir. 2022) (stating in dicta that *Mathis* did not create a new rule that "extended the normal one-year time limit of § 2255(f)(1)" by operation of § 2255(f)(3)).

a prisoner to use § 2241 where a structural feature of § 2255 deprived him of any opportunity to correct a fundamental defect in his conviction or sentence. *Davenport*, 147 F.3d at 611. A prisoner is denied that opportunity when through no fault of his own, he cannot present the proper interpretation of the statute underlying his conviction or sentence in a § 2255 motion—first because circuit precedent was "firmly against him" and then because the statute blocks him from presenting the new statutory argument. *Id.* at 610–11.

Franklin confronted precisely those circumstances here. Eighth Circuit precedent squarely supported his ACCA-enhanced sentence until well after the § 2255(f)(1) statute of limitations expired. A timely § 2255 thus would have been futile. In his situation, § 2255 never gave him an opportunity to correct a fundamental defect in his sentence. *Mathis* changed Eighth Circuit law after his one-year time limit expired but did not restart the limitations clock under § 2255(f)(3), leaving him no remedy in the sentencing court to correct the *Mathis* error.

Accepting the government's position here would create arbitrary distinctions between prisoners with essentially identical claims. Franklin would be barred from using § 2241—even though he satisfies all three *Davenport* requirements—simply because he refrained from filing a timely § 2255 motion that would have been frivolous under then-existing Eighth Circuit law. Yet he would be permitted to access § 2241 if he had filed a doomed § 2255 motion within a year of when his judgment became final. The same result would follow if he had filed multiple frivolous § 2255 motions thereafter, even though under earlier law repetitive filings would have been considered possible abuse of the

habeas writ. Our precedent neither requires nor supports creating such perverse incentives. A prisoner need not file a futile § 2255 motion and "clog the judicial pipes" merely to preserve the possibility of invoking new statutory rules in the future under the *Davenport* doctrine. *Id.* at 610.

We acknowledge that Franklin's case isn't a perfect fit with the interpretive rationale of *Davenport*. We have earlier explained that *Davenport* was probably a response to the problem that in drafting AEDPA's exceptions to § 2255(h)'s rule against successive motions, "Congress may have over-looked the possibility that new and retroactive statutory decisions … could support collateral review." *Unthank v. Jett*, 549 F.3d 534, 536 (7th Cir. 2008) (quotation marks omitted); *see also Chazen*, 938 F.3d at 863 (Barrett, J., concurring) (noting the possible "congressional oversight" in § 2255(h)). That rationale doesn't transfer easily to the time limits in § 2255(f). Even so, permitting Franklin to use § 2241 opens the door to habeas review no wider than *Davenport* already has.

The common denominator in our *Davenport* caselaw is that § 2255 isn't inadequate or ineffective "absent a compel-ling showing that it was impossible to use § 2255 to cure the defect identified in the § 2241 petition." *Lee v. Watson*, 964 F.3d 663, 666 (7th Cir. 2020) (quotation marks omitted). We do not lessen that burden here. But Franklin's claim is not any less "impossible" simply because § 2255(f) alone—rather than the combined effect of § 2255(h) *and* § 2255(f)—bars relief.

### III. Conclusion

*Davenport* is not without controversy, but it remains the law of our circuit. *See Webster*, 784 F.3d at 1136. Its rationale

governs here, and Franklin has satisfied its three require-
ments. Accordingly, he is eligible to proceed under § 2241.
Because his ACCA-enhanced sentence is unlawful, we
REVERSE and REMAND with instructions to grant appropriate
habeas relief.